## Case No. 10,245.

### NICHOLS v. NEWELL et al.

[1 Fish. Pat. Cas. 647.] [1]

Circuit Court, D. Massachusetts. Nov., 1853.

PATENTS — MARKING AN ARTICLE "PATENTED" WHEN NO PATENT HAS BEEN ISSUED— QUI TAM ACTION.

1. The purpose of section 5, of the act of August 29, 1842 [5 Stat. 544], is to guard the public right to use unpatented articles; and to prevent deception, by assertions that articles, not entitled to that privilege, have been patented.

[Cited in Oliphant v. Salem Flouring Mills Co., Case No. 10,486.]

2. To find for the plaintiff in an action qui tam under this section, the jury must find: (1) That the defendants affixed, or caused to be affixed the word "patent" to their articles; (2) that the defendants had no patent; and (3) that they affixed the word "patent," with the intent to deceive the public.

[Cited in Hawloetz v. Kass. 25 Fed. 766; U. S. v. Shapleigh, 54 Fed. 133.]

3. Affixing the words "Newell's patent, 1852," is affixing the word "patent" within the meaning of the act.

4. A count charging the defendants with putting the word "patent" on a lamp, is sustained by proof that the word was put upon the cap of a lamp.

5. The offense is completed by affixing the word "patent" to an article with intent to deceive. It is not necessary to prove that the article was sold. On the other hand, if the word is affixed with an innocent purpose, the offence is not committed, although the article may be afterward sold.

6. The word "patent," affixed to any article, imports to all who see it that the article is then a patented article.

7. The general rule is, that a man is to be held to intend that which is the necessary consequence of his acts, or what he infers will be the consequence of his acts.

8. If the word "patent" is affixed to articles without any purpose of using them, or of deceiving the public, but with the expectation of having a patent, and with the intention of withholding them from observation and sale until the patent should be granted, such purpose would be innocent.

9. Although some articles may be stamped innocently, if any are stamped with a guilty purpose the offense is committed.

10. If a party gives instructions to his workmen to manufacture articles, and put on the word "patent," with intent to deceive, and then goes to a distant city, and there changes his mind, without notifying or stopping his workmen, that uncommunicated change of intent does not prevent the manufacture going on under the original instructions, from being illegal and liable to the penalty.

11. Although the party may have expected a patent shortly, or within any time, if there was a purpose, at the time the word was affixed, to deceive the public, by causing them to believe that the articles were then patented, the offense would be committed.

12. The jury may assess as damages, not less than one hundred dollars, and as much more as they think proper.

This was an action qui tam, brought in the name of the informer [James R. Nichols]

[1] [Reported by Samuel S. Fisher, Esq., and here reprinted by permission.]

against the defendants [John Newell and others] to recover the statutory penalty for affixing the word "patent" to unpatented articles. The declaration contained three counts. The first charged the defendants with affixing the word "patent" upon ten lamps; the second, that they affixed the same word upon the cap of a lamp; and the third, that they affixed this word upon a can—all for the purpose of deceiving the public, there being, in fact, no patent for the lamp, the cap, or the can. The fifth section of the act of August 29, 1842, under which the suit is brought, is as follows: "And be it further enacted, that, if any person or persons shall paint, or print, or mold, cast, carve, or engrave, or stamp, upon anything made, used, or sold by him, for the sole making or selling which he hath not, or shall not have obtained letters patent, the name, or any imitation of the name, of any other person, who hath, or shall have, obtained letters patent, for the sole making and vending of such thing, without consent of such patentee, or his assigns or legal representatives; or if any person, upon any such thing not having been purchased from the patentee, or some person who purchased it from or under such patentee, or not having the license or consent of such patentee, or his assigns or legal representatives, shall write, paint, print, mold, cast, carve, engrave, stamp, or otherwise make or affix the word "patent," or the words "letters patent," or the word "patentee," or any word or words of like kind, meaning, or import, with the view or intent of imitating or counterfeiting the stamp, mark, or other device of the patentee, or shall affix the same, or any word, stamp, or device, of like import, on any unpatented article, for the purpose of deceiving the public, he, she, or they, so offending, shall be liable for such offense to a penalty of not less than one hundred dollars, with costs, to be recovered by action in any of the circuit courts of the United States, or in any of the district courts of the United States having the power and jurisdiction of a circuit court; one-half of which penalty, as recovered, shall be paid to the patent fund, and the other half to any person or persons who shall sue for the same."

Sidney Bartlett and G. G. Hubbard, for plaintiff.

Causten Browne and Rufus Choate, for defendants.

SPRAGUE, District Judge (charging jury). The laws of the United States provide that the exclusive right to an invention may be granted to any person who applies for it, the purpose being to give to inventors the exclusive right to make any articles, of which they are the first inventors, and which are useful to the public or those engaged in their manufacture.

To guard the public right to use such articles as have not been patented—to prevent deception on the public, by assertions that

articles, not entitled to this privilege, have been patented—the same laws affix a penalty of not less than one hundred dollars, to be paid by any person who shall affix the word "patent" for the purpose of deceiving the public. This being the purpose of the law, those who have made it have a right to judge of its propriety and expediency. Even if we did not see its propriety and utility—as I believe we all do—still our duty would be to enforce that law, as we would every other law of the land; and, if a person thinks this law has been violated, it is proper that the legal means should be resorted to, to suppress the mischief and vindicate the laws. The means, in the present instance, is an action of this description, and you are to try the action upon that law and the evidence presented to you, according to the best of your judgment.

If the plaintiff has proved that the defendants committed the offense, you are to say so; if you find that they did not commit the offense, then you are to bring in a verdict accordingly. The burden of proof is upon the plaintiff, to satisfy you, beyond a reasonable doubt, of such facts as are necessary to constitute the offense. You will, in the first place, inquire what is the offense charged, and what is necessary to be proved by the plaintiff to entitle him to a verdict. There are, in this declaration—that is, in this claim of the plaintiff—three distinct charges, embraced in what, in legal language, are known as three distinct counts.

The first alleges that the defendants affixed the word "patent" upon ten lamps, for the purpose of deceiving the public. That is one charge. The second alleges that they affixed the word "patent" upon a cap of a lamp, for the purpose of deceiving the public. That is another charge. The third alleges that they affixed the word "patent" upon a can, for the purpose of deceiving the public; and that is the third charge. Each one alleges that there was, in fact, no patent for the lamp, the cap, or the can.

Now, gentlemen, you will turn your attention to each of these. They have been argued in general; but I shall request you, when you retire to render your verdict, to be prepared to decide upon each of them separately. If you find that defendants are not guilty of either, then you have only to return a general verdict of "not guilty." If you find that they are guilty of all, then you are to return a general verdict of guilty.

Then you may be permitted to inquire as to the amount of damages—whether or not they shall exceed one hundred dollars. And, in reference to that, you will remember to return whether you find a verdict on all three of the charges, or on two of them, or on but one. The plaintiff, then, must prove, beyond a reasonable doubt, in the first place, that the defendants affixed the word "patent" to their articles—and I shall speak only in general terms, without distinguishing between the different counts, except where I shall deem it necessary. In the next place, you are to be satisfied that the defendants had no patent; and, in the third place, that they affixed the word "patent" with the intent to deceive the public. If the plaintiff proves these, he is entitled to a verdict; and if he does not, you are to acquit the defendants.

A question has been made, whether the affixing the words "Newell's patent, 1852," comes within the description of affixing the word "patent." I have no doubt of it at all. If the word "patent" was put on in any way, I think it answers the description, and corresponds sufficiently with the declaration.

Another question, gentlemen, which has been made, is whether the putting it upon the lamps, which is alleged in the first indictment, is proved by its being put upon the caps. Of that I have no doubt. The cap, when put upon the lamp, is a part of the lamp; and the mark is just as much upon the lamp when put upon one part of it as upon another. Then, if it was put upon the cap, distinct and separate from the lamp, if that was done for the purpose of deceiving the public, that would satisfy the second allegation that it was put upon the cap of the lamp.

There will not be two penalties for putting it upon the cap of the lamp, and putting the same cap on the lamp afterward. But it will satisfy the declaration to have it upon one cap, separate from the lamp; then one may be said to affix the word to a lamp, and another to a cap.

Gentlemen, I have stated to you what the plaintiffs must prove: in the first place, that those words were affixed by the defendants, and that the defendants had no patent. As to these facts, I believe there is no controversy in this case. I do not understand that there is any doubt that the defendants affixed, or caused to be affixed, the word patent to these articles; and there is no controversy that, at the time it was done, they had no patent—for the Newell patent, which they had, according to the proof, was granted to them in October, 1853. Then, it seems, the question is narrowed to this: whether the words were put on for the purpose of "deceiving the public," or, as it has been expressed by the counsel, with the "intent to deceive the public." And here, gentlemen, though there have been a great number of articles to which the word "patent" has been applied, your attention will be called to the articles particularly the subject of your examination at the present time.

The plaintiff has specified what articles he refers to. There being three distinct charges in the declaration, he has referred to three distinct classes of articles. Those sold to Mosely, on February 17, one class. Another class is those sold to Connelly; and another, those sold to Soule for himself and partner. Now, if upon any one of the articles sold, for example, to Mr. Soule, that word was

affixed by the defendants, for the purpose of deceiving the public, then that charge is made out. So, if any one of the articles sold to either of the other parties, the cap or the can, was marked by the defendants, for the purpose of deceiving the public—in that case, also, the charge is sustained.

Some question has been made as to the effect of the sales, or whether the sales constitute the offense. The statute forbids the affixing the word "patent," for the purpose of deceiving the public, upon any article. The offense is committed by affixing that word with that purpose; and, gentlemen, if it be affixed to an article for that purpose, then the offense is complete, whatever disposition of the article may subsequently be made.

On the other hand, if, when the word is affixed, it is with an innocent purpose, then the offense is not committed, whatever new purpose the defendants might have at a subsequent period. So that the inquiry is narrowed down to this: whether, as to the articles that are in question, the defendants, when they affixed, or caused to be affixed the word "patent," did it for the purpose of deceiving the public? Did, then, the defendants affix the word "patent" with that purpose? If they did do it for that purpose, then they are guilty of the offense charged against them; and although this seems to be a very narrow question, yet the evidence that has been adduced—properly and legally adduced —has branched off to a very considerable extent, and into a great variety of transactions.

In the first place, then, you look at the evidence as applicable to those articles sold to Mosely, Connelly, and Soule, they being the actual subjects of your inquiry, and those to which you will primarily look for the evidence to satisfy your minds. Then you are required to look also at the other evidence, upon the question of intent. What was the purpose of the parties at the time these articles were stamped? These sales were made in January and February last. Now, what the purpose was when these sales were made, is not a primary inquiry here, and it is only gone into to aid you in deciding upon the main question. The conduct of a person, when intent is to be ascertained, both before and after the act which is to be accomplished by it, may be gone into to determine what was his intent at the time of the act. For instance, you may take the case of larceny. An act is done in taking the property of another. For the purpose of ascertaining whether or not it was done with a criminal intent, you show the conduct of the party subsequently to the act, and prior, as showing the manner in which he approaches it. So, in all questions of intent, the conduct, as well as the declarations of the party, if they can have relation to the act, may be given in evidence, to satisfy the jury what was really the purpose and intent.

But the inquiry here still is, what was the purpose as to those articles? The first fact relied upon by the plaintiff, is the putting of the words on the article; and the inquiry he very reasonably makes of the defendants and you, is: "Why did these defendants, having no patent, and knowing that they had no patent at the time, put the words 'Newell's patent, 1852' upon an article?" It is false at the time it is put there, as the plaintiff alleges, and it must be so; it is in fact false, because there was no patent. It imports that that article is a patented article. Those words put upon it are so understood, and they import to all who see them, who are not otherwise informed, that that article is then a patented article. And here I may as well observe to you, as a general observation applying to this part of the evidence, that when we are ascertaining the intent or purpose of a man, we ascertain it by his acts. The general rule is, that a man is to be held to intend that which is the necessary consequence of his acts, or what he infers will be the consequence of his acts. It is not, for example, for a man to fire a loaded musket at another, and say he did not intend to hurt him. He must be held to know that that, being a dangerous weapon, and fired at another person, will do him injury, and he must be held to intend that consequence. And thus all criminal law is administered; a man is supposed to intend what he knows to be the natural consequence of his acts.

And now, gentlemen, another thing besides the affixing of the words "patent," or "Newell's patent, 1852." It is said that the articles in question were actually sold to customers in the store, openly, and apparently in the usual course of business, and with these words upon them. Then you are to inquire whether that is an act calculated to mislead those who receive them, and whether the defendants themselves were guilty of that act—participated in or authorized it—and thus, whether they then had the purpose of deceiving; and if they had that purpose, how far that goes to satisfy your minds that originally, when they put on the mark, they had the purpose of deceiving the public.

Another thing, gentlemen, relied upon, is that, at the time these articles were sold, a bill was given with them, in which the defendants described themselves as dealing in patent lamps and cases, and delivered to those persons—Mosely, Connelly and Soule—the articles with the words upon them, at the same time giving a bill, at the head of which is printed that they deal in patent lamps. Then, further, that there were certain declarations made verbally at the time, as to the change made by Mosely of one lamp for another, and the declaration made to Soule that the can was patented, and that he would not be permitted to manufacture it. These are the proofs to be relied upon in relation to these particular articles.

The defendants say, in answer to this, that the stamps were put on innocently, under the expectation of having a patent; and without

any purpose of using them, or otherwise deceiving the public; but, intending to keep them in their own possession, so that they would not be seen by anybody, until the patent should be granted, and they should know it, and when it would become true that the article was a patented article. That is the purpose with which the defendants say the stamps were put on. If that was the purpose, then it was an innocent purpose.

They further contend, that it is incumbent on the plaintiff to show that these particular articles, now in controversy, were made for that illegal purpose of deceiving the public; and that showing that other articles were made for that purpose is not sufficient. That is true; very many other articles were made. If these articles were not made with that purpose, then the plaintiff can not succeed. On the other hand, if these were made with that purpose, then it is immaterial what was the purpose in making any others.

Then, it is contended, that as the plaintiff has not given you evidence when these particular articles were made, you are at liberty to take such time as will be most consistent with the innocence of the defendants; and if, therefore, you find, from among the whole of those from which these may come, that any portion were made innocently, as these may be of that portion, you will find the defendants not guilty. And, gentlemen, the law is, that the burden is upon the plaintiff to show that these articles were thus stamped with a guilty intent. If you are not satisfied that these were, then you cannot find that the others were. And, if any portion of those, of which these may constitute a part, were innocently made—if the plaintiff has not shown you, if you are not satisfied from the circumstances that these came from the guilty portion—then the plaintiff has not made out that part of his case. On the other hand, if you are satisfied that all made by the defendants were made with a guilty purpose, then they are to be found guilty under the law.

If you see any ground of distinction, in the evidence, between one part and another—for you are not to act upon mere conjecture—if there be any ground of distinction, in the proof, between those manufactured at one time, and those manufactured at another time, you are to give the defendants the benefit of that distinction. If there be none, of course you will make none. But, still, if you are satisfied that these came from the guilty portion, then the guilt of the defendants is made out. The two portions particularly relied upon by the defendants, were those made in September, and those made in the last of December. You will recollect, by the evidence, taking, for example, the caps which were made by Mr. Draper, that in his testimony he says that he had manufactured, from the last of August to September 20, caps, upon which had been affixed the words "patent applied for." From that time to December 27, "Newell's patent, 1852."

If you find upon the evidence, a distinction between the articles made in the early part of September, and those made subsequently, you will consider whether or not they were made innocently.

If there is anything to show you that they were made in December, or if there is not anything to show you that they were not made then, you will ascertain whether it is proved to you whether they were made at any other time. But the importance of that consists in a request made by the defendants, upon which, as a matter of law, it is my duty to instruct you. The defendants insist that there was a change of purpose on their part, at Washington, on December 24; that then the first application for an invention made by one Phipps was rejected; that it was under that application that they had an expectation of a patent; that that being at an end, he then came home, directed his salesmen not to sell any more of the articles marked "patent," and directed his workmen not to make any more of them.

Now, the defendants further say, that if, prior to December 24, their manufacturers were going on making these articles, and that it was done with the guilty intent and purpose, yet, if they changed that purpose between December 24 and 27, and these were made between December 24 and 27, that that would exonerate them. I do not think that well founded in law. I think that if the defendants gave instructions to their workmen to manufacture articles, and put on the word "patent," and did it for the purpose of deceiving the public, and then went away to Washington, at a distance, and there changed their own wishes or views; and that that uncommunicated wish, or intent, or purpose—whatever it is called—did not reach the workmen, or any others in their employ, and the manufacture went on under the original instructions given, pursuant to an original illegal purpose, and was consummated by the act of affixing the word—this uncommunicated purpose, or wish, or intent, has no operation to prevent its being an affixing of the word "patent" on the article, with the intent to deceive the public.

The ground taken by the defendants is, that they expected a patent under Phipps' application; and, you will remember that that is the only patent that has any application to the present case; because, although they obtained a patent in October last, it was on an application made on December 24; and it is not here pretended that at the time these acts were done, they expected a patent under this application, because, even if granted, time must elapse before it could be taken up and acted upon. The expectation which the defendants relied upon, is the expectation of a patent under Phipps' application. Whatever acts, then, were done subsequently to the application of the defendants, it is not contended were done under

the then expectation of a patent. If, then, any of these stamps were affixed after December 27—after the time when the first application had failed, and the expectation had ceased—it was done without the expectation of a patent.

Gentlemen, I have thus stated to you, I believe, all that is necessary, as matter of law, for you to understand in your investigations. You are then to inquire, under these principles and these directions, upon the whole evidence in the case, as to the intention of the party in affixing the word "patent" to these articles; and, in addition to the evidence to which I called your attention, as applicable to these particular articles, there is other evidence in the case, which you are called upon to weigh and determine.

There is one other remark, however, that I ought to make to you as a general principle; and that is, if, upon the whole of this evidence, it is left in a state of uncertainty —if, taking all the evidence together, it can be reasonably and fairly reconciled with the defendants' innocence—then they are not proved to be guilty, although it may be fairly and easily reconciled with the supposition that they committed the acts charged. It is for the plaintiff to make out the case; and, if all the evidence taken together does not establish the charge, and the whole is fairly reconcilable with the supposition that the acts were innocently done, then the defendants are to be found not guilty.

On the other hand, if, taken altogether, the conclusion of guilt is the only fair and reasonable result at which you can arrive, then you are warranted in arriving at that result. It is for you thus to weigh the evidence on both sides.

The other evidence, besides that bearing directly upon these articles, branches off. as I have said, very much, and hence to a great extent applies to other articles manufactured and sold by the defendants, and other acts done besides that of affixing the words. For example, there is evidence before you, from Mr. Draper, as to the number of caps that he manufactured for lamps; that he begun the last of August, and continued until September 20, — that during the whole period. from September 20 to December 27, he continued to manufacture articles marked "Newell's patent, 1852," and that these articles were furnished from time to time to the defendants.

Now, the inquiry is, what was done with these articles, and what was the purpose for which they were originally made, with these words upon them, and how far does that aid you in ascertaining the purpose of these particular articles? The argument is, that it was an innocent purpose. If this was an innocent purpose—that is, if the defendants, when they employed Mr. Draper to make these articles, intended to withhold them from public view, so that they should not mis-

lead and deceive the public—why did they not put them aside where they would not be displayed to the public view, or be sold so as to be likely to meet it? If that was the purpose, you will look at the manner in which they dealt with them, to see whether it is consistent with taking care that the public was not deceived. On the contrary, if you find that, as they were manufactured, instead of being kept by themselves, they were carried to a store, and there kept openly as articles for sale, and sold, you will judge what force and effect that has to show that that was the original purpose.

It is contended, that, after a change of purpose. it is stated by some of the witnesses that these were put in boxes and put down cellar.

It may be asked, why it was not done prior to that time? And, how are you to account for the fact, that those persons employed to manufacture and mark the articles, put the words upon them, and kept them there, and sold them to customers? How is that consistent with the purpose of not deceiving the public? The quality is immaterial in this general view. Then, upon the question whether these parties were, at the time, in a state of mind to be desirous of having it understood by the public that this was a patented article, and making use of means to make the public understand that it was a patented article, you may go into the other evidence in the case—the advertisements, etc.; and, it may be well asked, if they did not mean that the public should understand that it was a patented article, why did they advertise? If they intended by that means, and by means of handbills and cards, to state that it was a patented article, then the question is, whether they had the same purpose in having the word "patented" put upon the articles at the time they were manufactured.

If you find that in the expectation of a patent, or from any other cause, they were made innocently at the time, the purpose being not to mislead the public by having it put on, then the defendants must be acquitted. If. on the other hand, you find that they were made with the purpose of misleading the public, you must find the defendants guilty of the charges brought against them.

I have only one word more to say to you on this case. If there was a purpose, at the time these words were affixed, to deceive the public, although the party may have expected a patent shortly, or within any time (if, in the meantime, they intended to put forth the articles and thereby deceive the public), then the offense would be committed. If they intended to deceive the public for a short time, and believed that they should then have their patent, still the offense is committed, because the statute forbids deceiving the public at any time.

If you find for the defendants, on all the

counts, then you have only to return a general verdict of not guilty. If you find for the plaintiff, then I shall request you to find also the amount of damages—the statute saying that the defendants shall incur a penalty of not less than $100 for each offense.

If you find them guilty on the first count, you may assess damages, not less than $100, and as much more as you may think proper. So, if you find them guilty on the second count, you may assess damages not less than $100, because any one article being marked incurs the penalty of $100, and more, if the jury think proper. On the third count, the same remarks will apply. And I will request you to say on which count you do find, or on all the counts, if you find on all of them.

The jury found a verdict for the plaintiff on the three counts, assessing as damages, $200 on the first, and $100 on each of the others.