## Case No. 13,466.

STOCKWELL et al. v. UNITED STATES.

[3 Cliff. 284;[1] 12 Int. Rev. Rec. 88.]

Circuit Court, D. Maine. April Term, 1870.[2]

CUSTOMS DUTIES — MANUFACTURES OF WOOD — SHINGLES — RECIPROCITY TREATY WITH CANADA — PENALTIES AND FORFEITURES — CONCEALING AND IMPORTING—WARRANT TO TAKE POSSESSION OF BOOKS — AFFIDAVIT — POWER OF DISTRICT JUDGE—DEFECT IN ALLEGATIONS — EXCEPTIONS —DEPOSITION—ADMISSIBILITY.

1. Although the act of March 2, 1861 [12 Stat. 192], does not enumerate shingles sawed, rived, or shaved, section 22 of the act provides that a duty of thirty per cent shall be collected on manufactures of wood, or of which wood is the chief component part, if imported from a foreign country, and not otherwise provided for, and the act of July 14, 1862 [Id. 557], provides for five per cent ad valorem additional. *Held,* that shingles were within the said provisions of the revenue laws, and were not exempted by the reciprocity treaty with Canada, whence the importations were made.

[Cited in Boyd v. U. S., 116 U. S. 635, 6 Sup. Ct. 535; Erhardt v. Hahn, 5 C. C. A. 99, 55 Fed. 275.]

2. Debt is the proper form of action for the recovery of the penalties sued for in this case.

3. All penalties and forfeitures incurred in consequence of the act under which this suit is brought may be sued for and collected as prescribed by the act to regulate the collection of duties on imports and tonnage. 3 Stat. 732, § 5; 1 Stat. 695.

4. Whenever the same plea may be pleaded, and the same judgment given on two counts, they may be joined in the same declaration.

5. Recovery for the duties and double values may be had in the same case.

6. Import duties are levied by act of congress, and when the goods are imported without paying or accounting for them, the liability is complete for the illegal importation.

7. The liability for receiving, concealing, or buying is founded upon a distinct act from that of illegally importing. An agent or a consignee may be liable for both, and the two counts may be joined.

8. The judge of the district court has power, when it appears by complaint or affidavit to his satisfaction that a fraud on the revenue has been committed by any person intrusted with or concerned in the importation or entry of goods, to issue his warrant to the marshal requiring him to enter a place or premises where any invoices, books, or papers relating to the merchandise are deposited, in respect to which the fraud is alleged to have been committed, to take possession of such books and produce them before the judge.

[Cited in Re Jordan, Case No. 7,512; Re Platt, Id. 11,212; U. S. v. Three Tons of Coal, Id. 16,515; U. S. v. Shapleigh, 54 Fed. 132.]

9. It is not necessary that a complaint or affidavit should accompany the warrant. If the court is satisfied that the fraud upon the revenue has been committed, the warrant will be granted.

The granting or refusing the warrant is a judicial act, and the complaint or affidavit is not necessary to be introduced where it appears, by the recitals of the warrant, that it was shown by complaint and affidavit to the satisfaction of the court that the alleged frauds on the revenue had been committed.

10. Where the warrant described the alleged frauds to be that defendants had at certain times committed frauds on the revenue by importing large quantities of shingles subject to duty by law, into the port of Bangor and other ports in the district, without paying or accounting for the duty to which the same were liable, it was *held* that the description was made with sufficient particularity.

11. It was *held* that shingles described in the warrant as the "growth and manufacture" of the provinces of Canada, were so described as to make their importation without paying duty a fraud on the revenue.

12. It is a defect in the warrant not to allege that the district judge became satisfied, by complaint and affidavit, that the alleged frauds on the revenue had been committed. This, however, could not avail the defendants in this case: (1) Because they did not at the trial except to the ruling of the court, admitting books, documents, etc. upon that ground; (2) because the books, etc. were properly admitted, even if the search-warrant were illegal.

13. Exceptions to the ruling of a court in admitting evidence should be sufficiently specific to enable it to understand the precise ground upon which the objection is based.

14. All that appeared in this case was, that when the books, etc. were offered in evidence, the defendants objected that the court was not authorized to issue, or the marshal to serve, the warrant in question, and that the district attorney could not put them in evidence, because obtained by that warrant. *Held,* that the objections were not sufficiently explicit to avail the defendants at this hearing.

[Cited in Kimball v. Weld, Case No. 7,776.]

15. The district judge could put the papers seized under the warrant in this case into the hands of the district attorney.

16. It was objected that the books, etc. were not in themselves legal evidence. *Held,* that as the same were not set forth in the bill of exceptions, nor in any way made part of it, the presumption was that the ruling of the district judge was correct, and the point was not open for examination.

[Cited in U. S. v. Hughes, Case No. 15,417; U. S. v. Three Tons of Coal, Id. 16,515.]

17. The objections were taken to the admissibility of a deposition: (1) That it did not appear that the magistrate had examined the deponent; (2) that it did not appear that the magistrate had reduced, or caused to be reduced, to writing the deponent's answers; (3) that it did not appear that the magistrate had reduced, or caused to be reduced, to writing the answers of deponent in his presence. The return stated that (1) "an examination on oath of the deponent was had before me." (2) Cross and direct interrogatories accompanied the commission, and the magistrate's return was, "the following are the answers," to the direct and cross interrogatories, and also that "the signatures of the deponent affixed to this deposition are in his handwriting, and made in my presence." *Held,* that as the magistrate was to permit no person other than a clerk to be present at the examination except himself and the deponent, and as it did not appear that a clerk was appointed, the presumption was that no one was present but the deponent and the magistrate, and, if not, then either the magistrate or the deponent must be presumed to have written the answers, and, if by either, the first and second objections failed.

[1] [Reported by William Henry Clifford, Esq., and here reprinted by permission.]

[2] [Affirming Case No. 16,406. Judgment of circuit court affirmed in 13 Wall. (80 U. S.) 531.]

(3) The fact that the signatures affixed were those of the deponent and made in the presence of the magistrate is an answer to the third objection.

18. One cannot claim property or the avails of it through the fraudulent acts of another without being affected by the act, especially if a partner, the same as if the act were his own.

19. Partners are liable in solido for the tort of one of their number, if the tort was committed by him as a partner, and in the course of the partnership business.

[Error to the district court of the United States for the district of Maine.]

This was an action of debt by the United States to recover certain duties and penalties for the alleged illegal importation of shingles into the port of Bangor, in the district of Maine. The suit was brought in the district court, where the jury returned a verdict for the plaintiffs. [Case No. 16,406.] Thereupon, after the judgment, the defendants [David R. Stockwell and others] excepted, and by writ of error removed the cause to the circuit court. Large quantities of shingles, it was alleged, were imported into the port of Bangor by certain persons unknown, without paying the duties, and that the same were then and there unladen and delivered in violation of the provisions of the revenue laws; and the charge in the first eight counts of the writ was that the shingles were then and there received, concealed, and bought by the defendants. Founded on that and other charges, as set forth in the other counts, the United States sued the defendants in a plea of debt, the writ containing twenty-three counts. Seven of the counts—to wit, from the ninth to the fifteenth inclusive—alleged that the goods as imported were subject to duty, and that the defendants did then and there knowingly attempt to make, and did knowingly make, an entry of said goods by means of a false invoice; and the remaining counts—to wit, from the sixteenth to the twenty-third inclusive—were counts for the unpaid duties, in which it was alleged that the defendants or their agents imported the goods without paying or accounting for the duties. Service was made upon all the defendants named in the writ, but the death of Leeman Stockwell was suggested at the first term, and the other defendants appeared and pleaded the general issue, and upon that issue the parties subsequently went to trial. Double the value of the goods was claimed in the first eight counts, and the jury found for the plaintiffs upon all those counts except the seventh, upon which their verdict was for the defendants; and they also found for the defendants upon all of the seven counts constituting the second set, in which it was alleged that the defendants knowingly attempted to make and made entries of the respective importations by means of false invoices. Separate claims for the unpaid duties of the respective importations were made in the third set of counts, and upon

those, except the twenty-second, the jury found for the plaintiffs; but they found for the defendants upon the twenty-second count, which had respect to the same importation as the seventh count in the first set.

Prayers for instructions were presented by the defendants in substance and effect as follows: (1) That the first eight counts were bad, because they did not sufficiently aver the primary element of the charge that the shingles were in fact illegally imported. (2) That both the first and third set of counts were bad, because they did not so describe the shingles as to show that they were subject of duty. (3) That shingles imported from the adjacent provinces at the date of the importations in question were not subject to duty; that they were entitled at that time to be admitted to entry free of duty, under the reciprocity treaty with Great Britain, though manufactured in part, if something remained to be done to complete the manufacture, as if the shingles were shaved but not jointed, as explained in the record. (4) That a civil action will not lie to recover the double values, and that the plaintiff could not recover in this action both the double values and the duties.

Richard H. Dana, Jr., for plaintiffs in error.
Nathan Webb, for the United States.

CLIFFORD, Circuit Justice. Brought here as the record is by writ of error to the district court to revise certain rulings of that court, and the judgment in the case, it will only be necessary to refer to such portions of the pleadings and evidence as are material to the questions presented for re-examination in the bill of exceptions. Goods brought from any foreign port or place are forbidden to be unladen and delivered before the duties are paid or secured to be paid, and the further provision is that persons who receive, conceal, or buy any goods, knowing them to have been illegally imported, and liable to seizure, shall, on conviction thereof, forfeit and pay a sum double the amount or value of the goods so received, concealed, or purchased. 11 Stat. 665; 3 Stat. 782. Large quantities of shingles, it is alleged, were imported into the port of Bangor by certain persons unknown without paying the duties, and that the same were then and there unladen and delivered in violation of that and other provisions of the revenue laws; and the charge in the first eight counts of the writ is that the shingles were then and there received, concealed, and bought by the defendants. Founded on that and other charges as set forth in the other counts, the United States sued the defendants in a plea of debt, the writ containing twenty-three counts. Seven of the counts, to wit, from the ninth to the fifteenth inclusive, allege that the goods as imported were subject to duty, and that the defendants did then and there knowingly attempt to

make, and did knowingly make, an entry of said goods by means of a false invoice; and the remaining counts, to wit, from the sixteenth to the twenty-third inclusive, are counts for the unpaid duties, in which it is alleged that the defendants or their agents imported the goods without paying or accounting for the duties. Service was made upon all the defendants named in the writ; but the death of Leeman Stockwell was suggested at the first term, and the other defendants appeared and pleaded the general issue; and upon that issue the parties subsequently went to trial. Double the value of the goods is claimed in the first eight counts; and the jury found for the plaintiffs upon all those counts, except the seventh, upon which their verdict was for the defendants; and they also found for the defendants upon all of the seven counts constituting the second set, in which it is alleged that the defendants knowingly attempted to make, and made, entries of the respective importations by means of false invoices. Separate claims for the unpaid duties of the respective importations are made in the third set of counts; and upon those, except the twenty-second, the jury found for the plaintiffs, but they found for the defendants upon the twenty-second count, which has respect to the same importation as the seventh count in the first set. Judgment was for the plaintiffs; and the defendants excepted and sued out this writ of error:

1. Shingles, whether sawed or rived and shaved, are not enumerated in the act of the 2d of March, 1861, as an article of importation subject to duty; but the twenty-second section of the act provides that there shall be levied, collected, and paid "on manufactures of wood, or of which wood is the chief component part," if imported from foreign countries and "not otherwise provided for," a duty of thirty per centum; and the thirteenth section of the act of the 14th of July, 1862, added five per centum ad valorem in addition to the duties imposed by the prior act. 12 Stat. 192; Id. 557. Prayers for instruction were presented by the defendants in substance and effect as follows: (1) That the first eight counts were bad, because they do not sufficiently aver the primary element of the charge, that the shingles were in fact illegally imported. (2) That both the first and third set of counts were bad, because they do not so describe the shingles as to show that they were subject to duty (3) That shingles imported from the adjacent provinces, at the date of the importations in question, were not subject to duty; that they were entitled at that time to be admitted to entry free of duty, under the reciprocity treaty with Great Britain, though manufactured in part, if something remained to be done to complete the manufacture, as if the shingles were shaved, but not jointed, as explained in the record. (4) That a civil action will not lie to recover the double values.

and that the plaintiff cannot recover in this action both the double values and the duties.

Responsive to the first request, the instruction given by the court was that if the facts set forth in the counts were proved, the allegations were sufficient to entitle the plaintiff to a verdict; and the court here entirely concurs in that instruction, as the respective counts allege that the goods, being by law subject to the payment of duties, were on a certain day imported and brought from some foreign port or place, naming the port, by a certain vessel, giving the name thereof, into this district, naming the port, by persons unknown, without paying or accounting for the duties to which said goods were then by law so subject. Particular reference to the provision levying the duties, and enacting the prohibition, and imposing the penalty, is never necessary even in an indictment, as the federal courts take judicial knowledge of the revenue laws imposing duties and providing for their collection. Most of the remarks made to show that the first prayer for instruction was properly refused apply with equal force as an answer to the objections taken to the refusal of the court to grant the second prayer. Nothing further need be added to show that the action of the court was correct, except to say that the counts respectively aver that the goods were imported without paying or accounting for the duties to which they were by law subject. They are described as shingles, and not as manufactures of wood, but shingles are enumerated in the treasury regulations as an article subject to duty, notwithstanding the treaty of reciprocity, and it is a matter of common knowledge that shingles are manufactured from wood. Manufactured of wood, as shingles are, they were clearly within the before-mentioned provisions of the revenue laws, and as such were subject to a duty of thirty-five per centum ad valorem, unless they were exempted by the terms of the reciprocity treaty, which was in full operation at the date of the several importations. "Timber and lumber of all kinds, round, hewed, and sawed, unmanufactured in whole or in part," are enumerated in the schedule annexed to the third article of that treaty, in which it is in terms agreed that the articles therein enumerated "being the growth and produce of the aforesaid British colonies, or of the United States, shall be admitted into each country respectively free of duty." Unmanufactured timber or lumber of any kind, as well such as was hewed or sawed, as that which was round, if otherwise unmanufactured in whole or in part, was entitled under the treaty to be admitted to entry as goods free of duty; but if the timber or lumber was otherwise manufactured than by a rough hewing or sawing, whether in whole or in part, the product of such rough hewed or sawed timber or lumber became and was subject to duty as provided in the revenue laws of the United States in operation at

the time the same was imported. Regulations upon the subject were promulgated by the secretary of the treasury on the 1st of February, 1857, and it appears that those regulations were founded upon the prior practice and decisions of that department. Articles entitled to entry free of duty are first enumerated in those regulations, and then follows a schedule of articles subject to duty under the revenue laws then in operation, and shingles, shingle bolts, and shingle wood are included in the enumeration. Appended to that schedule is a general regulation upon the subject, which provides that "articles of wood remain liable to duty under the existing tariff, if manufactured in whole or in part by planing, shaving, turning, splitting, or riving, or by any process of manufacture other than rough hewing or sawing;" and the supreme court, in the case of the United States v. Hathaway, 4 Wall. [71 U. S.] 407, held that that regulation was "a sound construction of the" stipulation contained in the treaty. Round. hewed, and sawed lumber are admitted free of duty if otherwise unmanufactured in whole or in part. The article, say the court, .may be round, hewed, or sawed, but if it has undergone the process of manufacture even in part, it·is taken out of the free list. U. S. v. Quimby. Id. 409.

Debt,·it is insisted, is not maintainable for a penalty, but it was decided otherwise in the case of U. S. v. Andrews [unreported]; and the court adheres to the opinion given in that case. All penalties and forfeitures incurred by force of the act under consideration may be sued for, recovered, distributed, and accounted for in the manner prescribed by the act entitled "An act to regulate the collection of duties on imports and tonnage." 3 Stat. 732, § 5; 1 Stat. 695. Provision was made by the eighty-ninth section of the principal collection act, that all penalties accruing by virtue of that act should be sued for and recovered, with costs of suit, in the name of the United States, in any court competent to try the same; and it was made the duty of the collector within whose district the seizure should be made, or forfeiture incurred, to cause suit to be commenced for the same without delay, and prosecuted to effect. U. S. v. Lyman [Case No. 15,647]; U. S. v. Bougher [Id. 14,627]; Walsh v. U. S. [Id. 17,116]; U. S. v. Allen [Id. 14,431]; Jacob v. U. S. [Id. 7,157].

Repeated decisions of the federal courts show that debt will lie to recover a penalty, as provided in the 89th section of the principal collection act, and that the same form of action is an appropriate remedy to recover unpaid duties in cases where goods from a foreign country have been imported without their payment and without giving security as provided by law. Authorities may doubtless be cited in which it is held that indebitatus assumpsit will lie for duties, but it is well settled in this court that debt also

will lie, which is all that need be affirmed at the present time. U. S. v. Lyman [supra]; U. S. v. Howland [Case No. 15,406].

Objections to the form of the remedy are clearly not well founded, and it is equally clear that the objections to the joinder of the counts must also be overruled, as the law is well settled that whenever the same plea may be pleaded and the same judgment given on two counts, they may be joined in the same declaration, and the fact that the duties are to be paid in gold is not sufficient to take the case out of the operation of that rule of pleading, as that matter is regulated by statute. Brown v. Dixon, 1 Term R. 276; Cheang Kee v. U. S., 3 Wall. [70 U. S.] 320; 13 Stat. 494, § 13; 12 Stat. 345.

Recovery both for the duties and the double values, it is suggested, cannot be had in the same case where the owner was the importer; but it is not perceived that the objection is entitled to any weight, and the defendants do not refer to any decided cases which give it any support. Import duties are levied by act of congress, and when the goods are imported without paying or accounting for the same, the action against the importer is founded upon a statute liability which becomes complete as soon as the goods are illegally imported. Goods illegally imported are forfeited and liable to seizure, and whoever "receives, conceals, or buys such goods, shall on conviction thereof forfeit and pay a sum double the amount or value of the goods." Owners, it is said, cannot "buy" their own goods, but they may receive or conceal goods belonging to their firm or to themselves as individuals which have been illegally imported, and which are forfeited and liable to seizure and condemnation. Suits to recover double values are founded on acts wholly distinct from the act of importation, and the owner, consignee, or agent may be liable both for the duties because the goods were imported without their payment and without giving security for the same. and also for the subsequent reception and concealment of the same, so that they cannot be seized and libelled as forfeited for a violation of the revenue laws. Counts joined for such distinct liabilities are not inconsistent, because they are founded upon distinct acts of the defendants. which, if proved, render them liable both for the prescribed· penalty and for the duties.

Exceptions were taken to the rulings and instructions of the court which must also be re-examined. Prior to the institution ᵒᶠ ᵗʰe suit, the district judge issued a search warrant under the second section of the act of the 2d of March. 1867. rected to the marshal, requiring him to enter, in the daytime, the store of the defendants' firm situated in Bangor, and there to search for such daybooks. journals. etc., as aie therein described; and the action of the marshal shows that he, in obedience to the precept, entered the store in the daytime, and there found,

took and carried away certain books, papers, letters, etc., as therein directed, and that he "brought them before the district judge as therein directed." Account-books, letters, copies of letters, and other documents so seized by the marshal and brought before the district judge, were by him placed in the custody of the district attorney for his official examination. Such account-books, letters, copies of letters, and other documents being so in the custody of the district attorney, he offered the same in evidence as tending to prove that the plaintiffs were entitled to recover.

Two objections were taken by the defendants, at the trial, to the admissibility of the books, papers, and documents as offered in evidence: I. That the court was not authorized to issue nor the marshal to execute the warrant in question. II. That the district attorney could not, if objected to by the defendants, put in evidence against them papers from his own possession, obtained and placed there by force of the warrant. Power to issue such a warrant is vested in the district judge whenever it shall be made to appear by complaint and affidavit to his satisfaction that any fraud on the revenue has been committed by any person interested or engaged in the importation or entry of merchandise at any port within such district; and the provision is that the warrant shall be directed to the marshal, requiring him to enter any place or premises where any invoices, books, or papers are deposited relating to the merchandise in respect to which such fraud is alleged to have been committed, and take possession of such books and papers and produce them before the said judge. 14 Stat. 547, § 2. Unreasonable searches and seizures are forbidden by the constitution, and the act of congress provides that "no warrant for such seizure shall be issued unless the complainant shall set forth the character of the fraud alleged, the nature of the same, and the importations in respect to which it was committed and the papers to be seized."

1. Warrants of the kind, it is conceded, may be authorized by congress, to search for articles used in the commission of crime, or for stolen goods, where the crime charged is within federal jurisdiction; but it is insisted that warrants for search and seizure, except in cases of alleged crime, are not allowed by existing laws.

2. Objection is also taken to the sufficiency of the warrant upon several grounds: (1) Because it is not accompanied by any complaint or affidavit, and the proposition is that the act of congress makes the existence of a complaint of the prescribed character essential to its validity. (2) That if even the recitals in the warrant may dispense with the production of the complaint, still the recitals in that behalf in this warrant are not sufficient because the facts recited therein do not amount to a fraud. (3) That the description of the importations in respect to which the alleged fraud was committed is bad because it is not sufficiently specific and definite. Contradicted as the first proposition is by the express language of the section under which the warrant in this case was issued, it does not seem to be necessary to give the proposition any very extended examination. Full power and authority were given to collectors, naval officers, and surveyors, or other persons specially appointed by either of them for that purpose, by the act of the 31st of July, 1789, to enter any ship or vessel in certain cases, and therein to search for, seize and secure any goods subject to duty therein concealed, and if they had cause to suspect a concealment thereof in any dwelling-house, store, building or other place, they or either of them might upon application on oath to any justice of the peace be entitled to a warrant to enter such house, store, or other place (in the daytime only), and there to search for such goods, and if any were found to seize and secure the same for trial. 1 Stat. 43. Revenue officers were also authorized by the act of the 18th of August, 1793, to go "on board of any ship or vessel * * * and the same to inspect, search and examine," and if it appeared that any breach of the revenue law had been committed whereby such ship or vessel or the goods on board were liable to forfeiture, to make seizure of the same. Id. 315.

Authority to procure such warrants upon proper application, on oath, to any justice of peace, and to make such searches and seizures, as was conferred by the first collection act, was continued by the act of the 4th of August, 1790, as appears by the forty-eighth section of that act. 1 Stat. 170. All the prior laws passed to regulate the collection of duties on imports and tonnage were revised on the 2d of March, 1799; and some of the antecedent regulations were essentially modified. But the provision which authorized collectors, naval officers, and surveyors, and such other persons as either of them might specially appoint, to procure a search warrant to search for, seize, and secure for trial goods subject to duty, where a concealment thereof was suspected, was re-enacted therein, in the same words in which it appears in the two prior acts of congress upon that subject. Id. 677. District judges were first authorized to issue such search warrants by the seventh section of the act of the 3d of March, 1863; but they were required by that act to direct the warrant to the collector of the port where the alleged frauds were committed. 12 Stat. 740. Service of the warrant under that act was to be made by the collector, as under the prior acts when he was the applicant for the same; but the act under which this warrant was issued provides that the warrant shall be directed to the marshal of the district. 14 Stat. 547, § 2. Search warrants, therefore, if in due form, are authorized in such cases by an act

of congress, on the condition and for the purposes specified in the provisions to which reference has been made. Congress may "lay and collect taxes, duties, imports, and excises," and may also "make all laws which shall be necessary and proper for carrying into effect" that express grant of power.

Experience, everywhere, shows that import duties cannot be successfully levied and collected without laws establishing regulations upon the subject requiring their payment, or security for the payment of the same, at the time the goods are imported, and before they are unladen and delivered. Regulations only are not sufficient, nor are prohibitions merely; but both must be enforced by legal sanctions. Important regulations upon the subject were adopted by the first congress at the time they created and organized our revenue system; and provision was then made for punishing their violation by fine, penalty, and forfeiture, according to the nature of the prohibited act, and as directed in the act of congress. Penalties accruing by the breach of the act were to be sued for and recovered, with costs of suit, in the name of the United States, by the collector of the district where the same accrued, unless in cases of penalty relating to an officer of the customs. 1 Stat. 47. Power to pass such laws and to prescribe the form of the proceeding for their enforcement, whether by indictment, information, debt, or action on the case, was never questioned; and any argument to support the right of congress to pass such laws would seem to be an act of supererogation, as it is clear they are necessary and proper to enable congress to carry into effect the express grant to lay and collect taxes, duties, imposts, and excises. Warrants to search dwelling houses, stores, buildings, and other places, for concealed goods alleged to have been illegally imported, and for the seizure of the goods for trial, have been allowed by law from the organization of the revenue system to the present time; and it is not perceived that any greater objection can be taken to a warrant to search for books, invoices, and other papers appertaining to an illegal importation than to one authorizing such a search for the imported goods. Such warrants might be procured, until within a recent period, upon application to a justice of the peace, and the same might be served by the collector, naval officer, or surveyor, by whichsoever the application was made, and to which the warrant was granted. 1 Stat. 43; Id. 678. Abuses occurred under those laws, and congress wisely repealed the provisions authorizing justices of the peace to grant such warrants, and vested the power in judges of the district courts, and has finally provided that the warrant shall be directed to the marshal of the district for service. 12 Stat. 740; 14 Stat. 547. Guarded as the new provision is, it is scarcely possible that the citizens can have any just ground of complaint, as the condition precedent to the granting of the warrant is that it shall be made to appear to the satisfaction of the judge of the district court, by complaint and affidavit, that a fraud on the revenue has been committed by some person or persons interested or in some way engaged in the importation or entry of merchandise at some port within such district. His act in granting the warrant is a judicial act, as he hears the applicant, and, if satisfied, among other things, that such a fraud on the revenue has been committed, he will grant the warrant, and if not so satisfied the application will be refused. Attempt is made in argument to limit the power to authorize such warrants to criminal cases, but the proposition finds no support in the acts of congress or in any decision of the federal courts. Individuals can not sue out or employ such a process in the course of civil proceedings, or for the maintenance of a mere private right, and where the judges of insolvency in Massachusetts were empowered by an act of the legislature to grant search warrants on the application of the assignees to search for the property and books of the debtor, the supreme court of the state held that the act was unconstitutional and void, as the process was to be used exclusively in mere civil proceedings, where nothing but a personal claim or the right to prosecute a private suit was involved. Robinson v. Richardson, 13 Gray, 454. Private parties, it is conceded, may not employ the writ as the means of prosecuting a private right, but it cannot be admitted that congress, in providing means to detect, prevent, and punish frauds upon the public revenue, is forbidden to authorize the use of such a process merely because the penalty imposed on the person violating the law and perpetrating the fraud may be recovered otherwise than by indictment. Debt undoubtedly is the proper remedy in the present case, but congress may enact that the penalty imposed for receiving, concealing, or purchasing goods illegally imported, shall be recovered by indictment or debt at the election of the prosecutor. Suffice it to say that the acts charged in the declaration were unlawful acts, declared to be such for the prevention of fraud and for the protection of the public revenue, and as such the acts charged were public wrongs, which subjected the perpetrators to the penalty provided by law; and it is as clearly competent for congress to authorize the district judges to issue a warrant in such a case to search for and seize the invoices, books, and papers evidencing such a fraud, as it would be for a state magistrate to grant a warrant to search for and seize stolen goods. Much jealousy existed against general warrants before and at the time the constitution was adopted, and the fourth amendment provides that "no warrant shall issue but upon probable cause, supported by oath or affirmation, and particularly describing the place to

be searched, and the person or thing to be seized;" but the provision affords no support to the limitation expressed in the proposition of the defendants. Entick v. Carrington, 2 Wils. 275; Cooley, Const. Lim. 299; Sanford v. Nichols, 13 Mass. 286: Bostock v. Saunders, 3 Wils. 434; s. c., 19 How. State Tr. 1030; Reg. v. Moseley, 1 Car. & K. 711. Writs of assistance, also, as granted by the courts to the revenue officers in the last century, empowering such officers, at their discretion, to search suspected places for smuggled goods, were justly regarded with great disfavor as facile instruments of arbitrary power; but the warrant for search and seizure, as authorized by the present act of congress to be issued by the district judges, is not properly subject to any of the objections which were made to those unguarded, discretionary licenses to subvert the principles of civil liberty. Paxton's Case, Quincy, 51; Cooley, Const. Lim. 301. Such a warrant cannot be issued under the act of congress, unless it is made to appear by complaint and affidavit to the satisfaction of the judge of the district court that a fraud on the revenue has been committed, nor unless "the complaint shall set forth the character of the fraud alleged and the nature of the same," describing also the importations and the papers to be seized. Search warrants for any purpose are doubtless obnoxious to very serious objections, and it is necessary in every case that the warrant shall particularly specify the place to be searched and the person or object to be seized, as it is clear that general warrants are forbidden by the fourth amendment of the constitution. Judges of the district courts have no authority to issue such warrants, unless they are directed to the marshal of the district; and the law requires that the warrant shall describe the invoice, books, or papers for which the search is to be made and the place or premises where they are deposited; and the direction to the marshal must be to enter the described place or premises where the invoices, books, or papers are deposited, and to take possession of the same, and produce them before the said judge. When the warrant is so framed as to constitute a compliance with the conditions expressed in that section of the act of congress, the court is of the opinion that it may be properly issued by the district judge, and that it might lawfully be served by the marshal of the district.

Certain formal objections are also taken to the warrant, which will be briefly considered. First, when the account books, letters, and documents were offered in evidence, the defendants objected to their admissibility; because they were obtained from their possession by force of the search warrant exhibited in the record; and it is insisted in argument that the ruling of the district judge, in admitting them in evidence, was erroneous, because the warrant is not accompanied by any complaint or affidavit; but the court is of the opinion that the introduction of the complaint and affidavit is not necessary in a case where they are referred to in the warrant, and it appears by the recitals of the same that it was shown by complaint and affidavit to the satisfaction of the district judge that the alleged frauds on the revenue had been committed as therein set forth. Objection is also made to the warrant that the alleged frauds are not therein described with sufficient particularity; but the court is of a different opinion, as it clearly appears from the recitals of the warrant that the defendants at the time therein alleged did commit frauds on the revenue by importing large quantities of shingles subject by law to duty into the port of Bangor and other ports in that district, without paying or accounting for the duties. In argument, the defendants allege that the acts charged, as described in the warrant, do not amount to a fraud, because the shingles imported were the "growth and manufacture" of the adjacent provinces, and they insist that such shingles were not by law subject to duty; but the court is not able to sustain that theory for the reasons already explained. and the objection must be overruled. They also insist that the importations were not described in the warrant with sufficient certainty; but they are described as shingles, and as shingles are enumerated in the treasury regulations as an article subject to duty under the reciprocity treaty, and as it is a matter of common knowledge that they are manufactured of wood, the court is of the opinion that the description is sufficient. Although the warrant is not defective in either of the particulars mentioned, still it does not allege that the district judge became satisfied by complaint as well as by affidavit that the alleged frauds on the revenue had been committed, and in that respect it fails to comply with the act of congress. Substantial compliance with the conditions specified in the section conferring the power is essential to the validity of the warrant, but the court is of the opinion that the defect will not avail the defendants in this case for two reasons: (1) Because they did not except at the trial to the ruling of the court admitting the books, letters, and documents in evidence upon that ground; (2) because the books, letters, and documents were properly admitted in evidence, even if the search warrant was illegal.

Exceptions to the ruling of the court in admitting evidence should be sufficiently specific to enable the court to understand the precise grounds of the objections to its admissibility, and unless they are so they cannot be regarded as the proper foundations for a writ of error to reverse the judgment. Evidence may be inadmissible because it is immaterial, or because it is secondary in its nature, or because better evidence exists.

or because it is defective in some legal requirement, or because it is oral and not in writing, or because it is offered to vary or contradict what is in writing, and in some cases because it was improperly obtained; but whenever objections to the admissibility of evidence are special in their nature and not apparent, they should be specifically stated, that the opposite party may be apprised of their real character, and that the presiding justice may not be led into error. Harvey v. Tyler, 2 Wall. [69 U. S.] 328; Rogers v. Marshall, 1 Wall. [68 U. S.] 644. Appellate courts are necessarily confined to the record, and all that appears in this case is that the defendants, when the books, letters and documents were offered in evidence, objected that the court was not authorized to issue nor the marshal to serve the warrant in question, and that the district attorney could not put the papers in evidence, as they had been obtained and placed in his possession by that warrant. Authority to issue the warrant was by law vested in the district judge, and inasmuch as the judge in issuing it exercised a judicial discretion, no doubt is entertained that the warrant, though defective in form, was sufficient for the protection of the marshal. Suppose, however, that the exception is sufficient, and that the search warrant was illegal, still the court is of the opinion that the books, letters, and documents were properly admitted in evidence, as they were pertinent to the issue, and were offered in evidence in the same condition in which they were when they came from the possession of the defendants, without mutilation or alteration. Com. v. Dana, 2 Metc. (Mass.) 329; Legatt v. Tollervey, 14 East, 302; Jordan v. Lewis, Id. 305, note. Lottery tickets in the case first mentioned had been seized under a search warrant, and the person in whose possession they were found had been indicted as having them in his possession with intent to sell the same in violation of law. Service was made and the accused went to trial, and the prosecuting officer offered the lottery tickets as evidence, and they were objected to as inadmissible by the defendant as having been improperly obtained by the use of an illegal search warrant; but the supreme court of Massachusetts held that where papers are offered in evidence the court can take no notice how they were obtained, whether lawfully or unlawfuly, nor will the court form a collateral issue to determine that question. Judge Story laid down the same rule twenty years before in the case of U. S. v. La Jeune Eugenie [Case No. 15,551], and the rule there established has never been questioned in this circuit. Illustrations to show what is meant may be. drawn from the rules applied to confessions in criminal cases. Confessions obtained by threats or promises are never admitted in evidence against the accused; but if he at the same time exhibits the implements with which he committed the crime, or the stolen

goods, or, in case of murder, if the accused exhibits the money or the effects of the deceased, they are admissible because, being facts, they cannot be changed by the threats or promises. King v. Warickshall, 1 Leach, Cr. Cas. 263; Com. v. Knapp, 9 Pick. 511; 1 Greenl. Ev. §§ 231, 232. Although a confession obtained by means of promises or threats cannot be received, yet if in consequence of that confession certain facts tending to establish the guilt of the prisoner are made known, evidence of those facts may be received. Rosc. Cr. Ev. 51; 1 Phil. Ev. (Ed. 1869) 524. Viewed in either light, the objection is not well founded, and must be overruled.

The next objection is that the district judge could not put the papers so seized and brought before him into the possession of the district attorney to be used as evidence in the case; but the court is of a different opinion, as the very object of the search is to ascertain whether there are such papers deposited in the described place or premises, and, if so, that they may be seized and "produced before the said judge." Papers so seized are declared by the act of congress to be "subject to the order of said judge," but he must allow the examination of the same by the collector of customs, or by any officer duly authorized by the collector for that purpose. Invoices, books, or papers so seized may be retained by said judge as long as, in his opinion, the retention thereof is necessary; and the court is of the opinion that invoices, books, or papers so seized, like the implements of crime, or stolen goods seized on search warrants, may in a proper case be given in evidence against the offender and perpetrator of the fraud. Com. v. Dana, 2 Metc. (Mass.) 337. Suits in the name of the United States are instituted in the circuit and district courts by the district attorneys, and while pending there such suits are controlled by those officers under the instructions of the attorney general. They are the proper officers to institute proceedings to recover such penalties as those incurred in this case, and when such a suit is pending and comes on for trial, the district attorney may well claim the right to use all legal evidence at command, whether the same is in the archives of the government or on file in the court. Confiscation Cases, 7 Wall. [74 U. S.] 456. The defendants also object that the books, letters, and documents were not by themselves legal testimony; but the decisive answer to this objection is that the burden to show error is upon the party alleging it, and inasmuch as the books, papers, and documents in question are not set forth in the bill of exceptions, nor in any way made a part of it, the presumption is that the ruling was correct, and the point is not open for re-examination.

Before the trial the deposition of Thomas Dowling was taken by the United States under a commission, and when it was offered

in evidence the defendants objected to the admissibility of the same because, as they alleged, the return does not show that the commission was duly executed. They took three objections to the sufficiency of the return: (1) That it does not appear by it that the magistrate himself examined the defendant. (2) That it does not appear by it that he reduced or caused to be reduced to writing the deponent's answer. (3) That it does not appear by it that he reduced the answers of the deponent to writing or caused them to be so reduced in his presence. These objections were overruled and the deposition was admitted subject to exceptions.

Erroneous in fact as the first objection is, it is only necessary to refer to the statement made in the return for its correction, where it is stated that an examination on oath of the deponent was had and taken before me, which certainly is a substantial compliance with the directions of the commission.

Interrogatories and cross interrogatories accompanied the commission, and the return is that "the following are the answers" of the deponent given to the several interrogatories and cross interrogatories thereto annexed, and in conclusion the return states "that the signatures of the deponent affixed to this deposition are in his handwriting and made in my presence." Depositions de bene esse may be reduced to writing by the deponent, as well as by the magistrate, and the court is not induced to give the commission in the case a construction which would prohibit the magistrate from granting that privilege to the deponent if exercised in his presence. 1 Stat. 89. Directed, as the magistrate was, to permit no person other than a clerk to be present during the examination, except the deponent and himself, and as it does not appear that any clerk was appointed by the magistrate, the presumption is that no other person than the deponent and the magistrate was present at the examination, and, if not, then it must be presumed that the answers were reduced to writing either by the deponent or the magistrate, and if by either, then it is clear that the second objection cannot be sustained.

Answers were given by the deponent to the several interrogatories and cross interrogatories annexed to the commission in an examination on oath before the magistrate, and the return states that the signatures affixed to the deposition are in the handwriting of the deponent, and that they were made in the presence of the magistrate, which is all that need be said in reply to the third objection.

Examination of the exceptions to the instructions of the court must also be made, which involves the necessity of further reference to the facts in the case as reported. By the bill of exceptions, it appears that the firm of D. R. Stockwell & Co., consisting of Davis R. Stockwell, John S. Cutler,

and George S. Chalmers, who was not sued, had long been engaged at Bangor in the lumber business; that the senior partner in 1863 proposed to the partners that the firm should engage with Leeman Stockwell in the shingle business, in which he had large experience, and the arrangement as proposed was accepted to the effect that Leeman should transact the business in the name of the firm and give it his entire attention; that the firm should furnish the capital, and that the profits or loss should be divided one half to the person transacting the business and the other half to the firm which furnished the capital. Pursuant to that arrangement, Leeman Stockwell engaged in the business during the years 1863 and 1864, collecting and buying shingles on the St. John's river, and in forwarding the same to Bangor, consigned to the firm of the defendants; and the bill of exceptions also shows that a separate account of the business was kept by the firm, and that the account at the end of each year was closed by the division of the profits as agreed in the arrangement. Evidence was introduced by the plaintiffs tending to show that the shingles in question were the growth and produce of the adjacent province, and that the defendants had actual knowledge that such was the fact. Opposing testimony was introduced by the defendants, but the jury returned their verdict in favor of the plaintiffs. During the period the active partner in the business employed an agent, and when the cargoes came to Bangor they were reported at the custom house, with the manifest and foreign clearance, together with the certificate of the agent and two merchants on the affidavit of the agent to their American origin, and the collector required no duties on the cargoes, and no entries were made, nor were any invoices or bills of lading produced to the collector. They were openly in the possession of the firm without any attempt at concealment; were throughout, in fact to the commencement of the suit, treated by all parties as not being subject to duty. Whether the witnesses were entitled to credit or not was left to the jury, but taking the arrangement to have been as described in the bill of exceptions, the jury was instructed that if Leeman Stockwell, in the conduct and management of the business so intrusted to him, and in the course of the business, and for the common and joint benefit of himself and that firm, went into New Brunswick, and there knowingly purchased and received, on their joint account, shaved shingles, the growth and produce of that province, and that he afterwards, by himself or his agents, knowingly sent such shingles to his copartners at Bangor, fraudulently documenting them as the growth and produce of Maine, so that the shingles in the regular course of business should thereby be, and were, admitted and received into the United States by the defendants as the growth of

Maine, the shingles so imported were illegally imported and were liable to seizure, and that the defendants, being his partners, were in this action chargeable with, and bound by, the knowledge which he possessed, if he did possess it, that the shingles were the growth and produce of that province, and as such were liable to duty, and that the shingles were liable to seizure because they were illegally imported. They were also told that, the action being a civil action, and not a criminal prosecution, the knowledge of one of the firm touching the matters involved in this suit is to be deemed the knowledge of all the defendants, his copartners in the shingle business; that if Leeman Stockwell, as a member of the firm being so engaged in the shingle business at the time of the importation and reception of the shingles at Bangor, knew that they were province shingles subject to duty and liable to seizure, and that they were illegally imported, it is not necessary for the government to prove that the several defendants personally had actual knowledge of those facts which were then within the knowledge of their partner who transacted the business.

That if, with that knowledge so possessed by Leeman Stockwell,—that the shingles were illegally imported and liable to seizure, —the defendants, in the usual course of the business, received the shingles at Bangor, and they were disposed of by them, and the profits were divided agreeably to the arrangement, the jury were authorized to find that the defendants, being partners of the said Leeman, received the shingles knowing that the same were illegally imported, and that they were liable to seizure. Remarks beyond those already made, to show that the shingles were illegally imported and liable to seizure, are unnecessary, as that has been made to appear to the entire satisfaction of the court; nor is it worth while to occupy much time in proving that the firm of the defendants, as it existed prior to the arrangement, was a partner with Leeman Stockwell in the shingle business, as that is conceded by the defendants in their printed argument. Partnership is usually defined to be a voluntary contract between two or more competent persons to place their money, effects, labor, and skill, or some one or all of them, in lawful commerce or business, with the understanding that there shall be a communion of the profits between the respective parties. Actual participation in the profits, as principal, is, in general, sufficient to create a partnership, as between the parties and third persons; but the express agreement in this case was that the defendants should participate both in the profits and loss, and, as they furnished the capital, and have settled the accounts, and carried the agreement into full effect, the nature of this transaction is placed beyond doubt. Berthold v. Goldsmith, 24 How. [65 U. S.] 541; Denny v. Cabot, 6 Metc. (Mass.) 90.

Argument to show that Leeman Stockwell had knowledge of the alleged frauds is quite unnecessary, as it appears that he made the purchases, shipped the shingles, gave or procured the affidavits and certificates containing the false statements which misled the revenue officers and induced them to allow the shingles to be unladen and delivered without entry or permit, and without paying or accounting for the duties. Such being the state of the case, nothing remains for re-examination, except to inquire and determine whether the defendants are chargeable with the knowledge possessed by their partner and agent who transacted the business. All the shingles were consigned to them under the arrangement, and they made the sales, received the purchase money, and, when the accounts were adjusted, one half of the amount was paid over to the perpetrator of the frauds, and the other half was absorbed in their general business. Torts may arise in the course of the business of the partnership, says Judge Story, for which all the members of the firm may well be liable, although the act may not in fact have been assented to by all the partners. Thus, for example, if one of the partners should commit a fraud in the course of the partnership business, all the partners may be liable therefor, although they may not all have been concerned in the fraudulent act. Castle v. Bullard, 23 How. [64 U. S.] 188; Story, Partn. § 165; Colly. Partn. §§ 445, 447. When one assuming to be an agent had committed a fraud in a sale, it was held in Taylor v. Green, 8 Car. & P. 320, that the mere adoption of the sale and the receipt of the money by the person for whom the sale was made rendered him liable for the fraud. Decided cases of like import are quite numerous, and some of them were made at a very early period. Attorney General v. Stanyforth, Bunb. 97. Treble value of the goods was recoverable at that time, if the goods were imported knowing that the duties had not been paid; and yet the court held in the case of Attorney General v. Burges, 1d. 223, that if several persons were concerned, either as partners or otherwise, the crown might proceed against any one of them for the whole penalty, it being in the nature of a tort, and not a contract, and that there was no necessity to prove that the goods actually went into the hands of the party sued; that it was sufficient if they came into his power, or into the custody of his agent, or of any person by his direction. King v. Manning. Comyn, 617. Partners constitute as such but one person in law; and the act of one in the business which constitutes the subject matter of the partnership is civiliter the act of all. McFarland v. Crary, 8 Cow. 258; Peck v. Fisher, 7 Cush. 386; Story, Ag. § 452; Smith, Mast. & Serv. 151; Doe v. Martin, 4 Term. R. 66. Most of these cases rest upon the doctrine which is so clearly applicable in this case, that it does not lie with one to

claim property or the avails of it through the fraudulent act or another without being affected by that act, especially if he was his partner, the same as if it were his own, and the court is of the opinion that the defendants, inasmuch as they have received the fruits of the fraud, are liable to the penalties annexed to their commission. Olmsted v. Hotailing, 1 Hill, 318; Nicoll v. Glennie, 1 Maule & S. 588; Stockton v. Frey, 4 Gill, 406. Partners are liable in solido for the tort of one of their number, if that tort were committed by him as partner, and in the course of the partnership business. Locke v. Stearns, 1 Metc. (Mass.) 560; Hawkins v. Appleby, 2 Sandf. 421; National Exchange Co. v. Drew, 32 Eng. Law & Eq. 1. Recent decisions in England have adopted these principles in their widest extent, and applied them in revenue cases. Attorney General v. Riddle, 2 Cromp. & J. 493; Attorney General v. Siddon, 1 Cromp. & J. 220. Examined in any point of view, it is clear that there is no error in the record, and the judgment is affirmed, with costs.

[The judgment of this court was affirmed by the supreme court, where it was carried on writ of error. 13 Wall. (80 U. S.) 531.]