## Case No. 15,734.
### UNITED STATES v. MASON.

[Cited in Cully v. Baltimore & O. R. Co., Case No. 3,466. Nowhere reported; opinion not now accessible.]

## Case No. 15,735.
### UNITED STATES v. MASON et al.

[6 Biss. 350;[1] 21 Int. Rev. Rec. 245.]

District Court, N. D. Illinois. May, 1875.

INTERNAL REVENUE—DISTILLERIES—GOVERNMENT CONTROL—RIGHT TO EXAMINE BOOKS.

1. The government has, under the revenue laws, the right to control and regulate the manufacture of spirits, for the purpose of the collection of its revenue.
[Cited in U. S. v. Three Tons of Coal, Case No. 16,515.]

2. The government has the right to examine all books kept by a distiller or rectifier pertaining to his business—his private books as well as those required by law. Such examination should be made by order of the court. and in the presence of the party or his counsel.
[Cited in Place v. Norwich & N. Y. Transp. Co.. 118 U. S. 503, 6 Sup. Ct. 1162. Disapproved in Boyd v. U. S., 116 U. S. 635, 6 Sup. Ct. 535; U. S. v. Shapleigh, 4 C. C. A. 237, 54 Fed. 132.]

3. If the private books show a different state of facts from that shown by the books kept for the government, they may be treated as government books also.

4. If the distiller refuses to produce his books, the court may order the vaults containing them to be opened by its officers.

5. It is not necessary to specify the books, but the officers may take all books found on the premises, the presumption being that they belong to the distilling business.

Motion to compel the defendants, distillers, to produce their books and papers for the inspection of the government officials.

J. D. Ward, U. S. Atty., and John E. Burke, Asst. U. S. Atty.

Matt. H. Carpenter and Edmund Jussen, for defendant.

[1] [Reported by Josiah H. Bissell, Esq., and here reprinted by permission.]

BLODGETT, District Judge. The questions before me are presented in two lights, or rather there are two proceedings before the court for decision, involving substantially the same points. Within a short time after the seizure of the rectifying establishment of Parker R. Mason & Co., and the distillery and rectifying establishment of Roelle, Junker & Co., an application was made to the court on behalf of the claimants of the property, setting up, in substance, that the officers of the government had possession of the establishments of the claimants, and that in the establishments, respectively, were safes or vaults which contained the private books, writings, and papers of the claimants and that the officers threatened to open the vaults or safes, and examine and carry away the books, etc. Upon the showing made by the petition an injunction order was entered by the court, restraining the officers of the government from opening the safes or vaults until the question could be argued and determined by the court as to the right to seize and examine books and papers

Shortly after the granting of this injunction, and before the time fixed for the argument, the district attorney came into court. and, under the provisions of the fifth section of the act of 1874, entitled, "An act to amend the customs-revenue laws and repeal moieties" (18 Stat. 186), asked for an order authorizing an examination of certain books belonging to the parties in question, stating in substance that those books would tend to prove the issue raised by the seizure proceedings.

The questions argued were practically whether the injunctional order which was granted in the first instance in favor of Parker R. Mason & Co., and Roelle, Junker & Co., should be made final, and also whether the respondents, the claimants of the property which had been seized, should be required to produce their books for the inspection of the officers of the government.

The property which has been seized in this instance is all the property used in the business of distilling and rectifying. which the claimants were carrying on. The property seized consists of the distillery, tools, apparatus, material, and distilled spirits on hand, found upon the distillery premises, and the liquors found in the rectifying establishments, with the apparatus and fixtures used in the rectifying business. The government claims to have seized this property under the various provisions of the internal revenue law, subjecting the property of distillers and rectifiers to seizure in cases of violation of the provisions of the revenue law.

An examination of the various provisions of the revenue law, which I will not go through in detail, shows that this law is framed substantially upon the theory that the government is, for the purpose of collecting the tax imposed. to exercise an exclusive surveillance over the manufacture and the rectifying or compounding of alcoholic spirits.

The first question presented is: Has the government the right to take charge of the private business of individuals of any character for the purpose of revenue, and exercise the control over that business, determine the manner in which the manufacturer shall manufacture, the time wherein he shall work, the manner in which he shall store or keep the article manufactured, and, in fact, oversee and regulate his entire business?

Revenue laws of this character are not new to this government. They were adopted at an early day, and have been rigidly enforced, and no question has been seriously raised as to the right of the government under the powers granted in the constitution, to exercise this kind of surveillance and control over certain classes of business. The same power had been assumed and exercised by other governments, from whom, to some extent, this government copied or derived its forms for raising revenue, and we find that the English government had assumed, long prior to the Revolution and to the Declaration of Independence by the American colonies, the control of the manufacture of spirits within its realm, as well as the manufacture and sale of various other commodities; and notwithstanding the high tax which was imposed in the early days of the late war upon distilled spirits, and the difficulty which the government had in enforcing the collection of that tax, the power of the government to exercise this surveillance over this class of business was never seriously questioned, or if questioned, it was never sustained in any court of competent jurisdiction, so far as I have been able to ascertain. I therefore assume that it is now an established proposition, that the government has the right to take the control of the manufacture of the alcoholic spirits for the purpose of managing the collection of its revenue assessed upon those spirits; that it has a right to exercise the surveillance which it assumes under the various laws now in force over the manufacture and sale, and compounding and rectifying of alcoholic spirits.

Assuming, then, that the government has the right to exercise this control, I find on examination that, under the laws now in force, the government practically runs the distilleries, that is, it superintends every department, from the fitting up of the distillery up to the sale and delivery of the spirits by the manufacturer. It requires its officers, in the first place, to take a survey of the distillery, to determine its capacity, to determine how long the mash shall set before it is distilled, and to determine the time of distillation. It takes the measure of the capacity of every vessel for holding the distilled spirits, and the material from which the distilled spirits are manufactured. It requires its officers to keep an account of all the material purchased,—of the grain, malt, yeast, fuel, and all material that goes into the manufacturing process.

In addition to all this, it requires the distiller to keep certain books in which he shall truthfully set down every article purchased, as it is purchased, which goes into his distillery, or is used therein for the purposes of the manufacture of alcoholic spirits. It requires the measurement of all the spirits run or manufactured, their gauging and proof to be ascertained, and a record to be kept thereof, by which such spirits can be identified in the market. They cannot be delivered from the distillery except under the inspection of the sworn officer of the government; and not only that, but the distiller must keep a record of all spirits which are delivered from his distillery. And an inspection or examination of the law shows or indicates very clearly that it is the intention of the law to provide for the keeping of these books in such manner as that they shall truthfully show all the material facts in regard to the spirits produced and removed from each licensed distillery.

It is claimed in these cases that the distillers and rectifiers have kept the books required by law,—that is, it is so claimed on the part of the distillers; and the only question in this case is: Shall the government have access to any other books which the distiller or rectifier has kept in the process of carrying on his business? And it seems to me very clear that when you accept the proposition that the government assumes this absolute control of the business of the distiller, and this surveillance over the manner in which the business is carried on, it follows almost as a necessary conclusion from the first proposition that the government has the right to examine any books which the distiller or rectifier may keep pertaining to his business as a distiller, or a rectifier, or a compounder, which will tend to establish either the verity or the want of verity of these books; that for the purposes of the government every book which a distiller keeps is to a certain extent a government book; that he cannot claim that any book in which he makes an entry pertaining to his distilling business is his private book. It belongs to the government.

True, if he made truthful entries in his government books they would tell the same story, and only the same story, which would be told in his private books, and the two would correspond—and the question is: Should any honest distiller be afraid of a comparison between the books which he has kept for his private information and the books which the law requires him to keep? The truth will not hurt him, and if he has been guilty of any malpractice, then the government, it seems to me, has the right to examine any of the books which he has kept in the progress of his business, for the purpose of determining the correctness of the books which the law requires him to keep. The law requires that he shall keep these books correctly. The question to be deter-

mined is: Has he kept them correctly? And for the purpose of determining that it seems to me that any book pertaining to his distilling business may be examined rightfully by the officers of the government. And this does not seem to me to infringe upon any of the rights which are guaranteed to the citizen by any of the provisions of the constitution, especially by the fourth and fifth amendments, which were invoked by counsel on the argument, which protect the citizen against ·unreasonable seizures and searches; also the amendment which protects the citizen against being compelled to give evidence against himself. Nor is the examination of these books, under the circumstances, it seems to me, an unreasonable claim on the part of the government. The distiller, by entering upon the business under the terms of the law, has in effect conceded to the government the right to the fullest and most thorough examination of all his affairs as a distiller. In this business he has no secrets from the government. Such examination is to be made under the order of the court, and in presence of the party or his counsel.

So, too, it seems to me there is no violation of the principle that no man shall be compelled to bear witness against himself. The law, as it has been administered in this country, from the organization of our government, has allowed the books of even a criminal to be used, and entries made by him upon his books were admissible in evidence against him for the purpose of convicting him of a criminal offense. But this is not a criminal offense. ·This is a proceeding against certain property in rem, which is inculpated for a violation of the revenue laws; and it would seem to me that the question whether a party should be compelled to bear witness against himself or not in a criminal case, is not raised by this proceeding. If these parties were indicted under the criminal clauses of the law, the objection might be well taken, but I do not think that question is raised here. Therefore it seems very clear to me that these books which pertain to the management of this property and the management of his business, whether the distiller calls them his private books or not, are the proper subjects of examination under the orders of the court, for the purpose of determining whether he has truthfully kept the books which the law requires him to keep, and has conducted his business as a distiller according to law.

The act of June 22, 1874, "amending the customs-revenue laws and repealing moieties," as it is called, provides in the fifth section, "that in all suits and proceedings, other than criminal, arising under any of the revenue laws of the United States, the attorney representing the government, whenever, in his belief, any business book, invoice or paper, belonging to or under the control of the defendant or claimant, will tend to prove any allegation made ·by the United States, may make a written motion particularly describing such book, invoice, or paper, and setting forth the allegation which he expects to prove; and thereupon the court in which suit or proceeding is pending, may, at its discretion, issue a notice to the defendant or claimant to produce such book, invoice, or paper in court, at a day and hour to be specified in said notice, which, together with a copy of said motion, shall be served formally on the defendant or claimant by the United States marshal, by delivering to him a certified copy thereof, or otherwise serving the same as original notices of suit in the same court are served; and if the defendant or claimant shall fail or refuse to produce such book, invoice, or paper, in obedience to such notice, the allegations stated in said motion shall be taken as confessed, unless his failure or refusal to produce the same shall be explained to the satisfaction of the court. And if produced, the said attorney shall be permitted·under the direction of the court, to make examination (at which examination the defendant or claimant, or his agent, may be present) of such entries in said book, invoice, or paper, as relate to or tend to prove the allegation aforesaid, and may offer the same in evidence on behalf of the United States. But the owner of said books and papers, his agent or attorney, shall have, subject to the order of the court, the custody of them, except pending their examination in court as aforesaid." 18 Stat. 186.

Now it is claimed that the provisions of this law give the distillers the control of their books; that is, that the government has no right to seize the books, but may simply require the distiller or rectifier to produce his books or take the consequences which the law imposes upon him; that is, the confession of the allegations which the district attorney says the books will tend to prove.

I do not construe this law as necessarily implying that the government may not examine these books for the purpose of determining whether there is anything in them which will tend to prove or disprove the charges made against these distillers. And I come to the conclusion that for the purpose·of this case I shall require the books of these parties to be produced before one of the commissioners of this court at once, where the government officers may have an opportunity of examining them. After that, it will be for the court to say whether they will be treated as inculpated property or not. If these books, when examined, shall turn out to be another set, or may be properly understood to be another set of government books or another set of books pertaining to this business of distilling, showing a different statement of facts from what is shown in the government books, I should think it

would be the duty of the court to treat them as belonging to the government,—that is, they should be considered as the true distillery books.

The order of the court will be that the books in question, or rather the safes and vaults in question, shall be opened in the presence of the marshal and collectors of internal revenue; that the books and papers therein be taken before Mr. Hoyne, the commissioner, and there subjected to the examination of the district attorney and such officers of the government as he may desire to have examine them, the owners of the property, of course, having the right to be present, represented by counsel, during such examination.

[Mr. Ward: At the opening of the safes I desire also that the revenue officers be permitted to be present, as it may turn out that there is other property that is a proper subject of seizure in the ordinary sense for the purpose of perfecting that. I suppose, while they are not named by your honor, they will be included in the order.

[The Court: Very well, that will be proper.

[Mr. Smith: The court will see, by reference to the papers, that the motion of the district attorney does not specify the books as the law requires. It seems to me that the court ought to specify what books are to be produced.

[The Court: I think that is to be determined when we ascertain what books are in there. The fact is, here, these safes or vaults are a part of these premises which have not been explored. They are like a secret room belonging to these premises which has not been examined, and to which the officers of the government have been denied access. I think they ought to be opened for the purpose of exploring.

[Mr. Smith: That I do not dispute. The point is, what books shall be produced before Hoyne?

[The Court: All books that are found when these safes are opened are to be produced.

[Mr. Smith: Without reference to what they contain?

[The Court: Yes, sir; the presumption is that they belong to the business of the distillery. Of course, there may be books there that have no application to it. But who can determine that before they are examined? And the only place then, will be before the commissioner.

[Mr. Jussen: Do we understand your honor to hold that, under the law of 1874, the government has the right of seizure originally, aside from the request for the production of the books upon notice?

[The Court: I think so. I think I have examined the question sufficiently to satisfy myself that these books should be produced. I have not put my decision upon the ground that these books were inculpated property, because if they pertain to the business of distilling or rectifying, they are part of the government books. They are part of the books that pertain to that business, and the government has the right of access to all of them.

[Mr. Ward: This order will take effect immediately?

[The Court: Yes, sir.] [2]

Judge Dyer, in the Eastern district of Wisconsin, in U. S. v. Three Tons of Coal [Case No. 16, 515], approved the above decision and made substantially the same rulings. ·