## UNITED STATES v. SHAPLEIGH.

### (Circuit Court of Appeals, Eighth Circuit. January 27, 1893.)

### No. 121.

1. FALSE CLAIMS AGAINST THE UNITED STATES—PRESENTATION—SUIT FOR PENALTIES—DEGREE OF PROOF REQUIRED.

In a suit under Rev. St. § 3490, to recover the double damages and forfeiture prescribed against any one presenting a false or fraudulent claim against the United States to one of its officers for payment or approval, the government must prove its case beyond a reasonable doubt; and defendant may introduce evidence of good character, for the proceeding, while civil in form, is criminal in its nature and effect.

2. SAME—EVIDENCE OF INTENT.

In such a suit the government must show that defendant not only presented a false or fraudulent claim, but that he knew it to be such; and the jury are not warranted in inferring such knowledge merely from the fact that he acted negligently and without ordinary business prudence; they must at least be satisfied that he was aware of circumstances such as would induce an ordinarily intelligent and prudent man to believe the vouchers to be false.

3. APPEAL—REVIEW—HARMLESS ERROR.

No judgment should be reversed for an error which could not have prejudiced the rights of the party against whom the ruling was made.

4. SAME—GENERAL OBJECTIONS TO EVIDENCE.

A mere objection, where no grounds for it are assigned at the trial, cannot be considered in an appellate court. Burton v. Driggs, 20 Wall. 125, approved and followed.

5. TRIAL—PROVINCE OF COURT AND JURY—DIRECTING VERDICTS.

It is the duty of a federal trial court to direct a verdict for defendant when the evidence is such that, in the exercise of a sound judicial discretion, it would be compelled to set aside a verdict returned in favor of plaintiff. Railroad Co. v. Davis, 53 Fed. Rep. 61, and Monroe v. Insurance Co., 52 Fed. Rep. 777, followed.

In Error to the District Court of the United States for the Eastern Division of the Eastern District of Missouri.

Action by the United States against Frank Shapleigh to recover certain penalties prescribed by Rev. St. § 3490. The district court gave judgment on a verdict for defendant. Plaintiff brings error. Affirmed.

Statement by SANBORN, Circuit Judge:

Section 5438 of the Revised Statutes of the United States provides that:

"Sec. 5438. Every person who makes or causes to be made, or who presents or causes to be presented, for payment or approval, to or by any person or officer in the civil, military, or naval service of the United States, any claim upon or against the government of the United States, or any department or officer thereof, knowing such claim to be false, fictitious, or fraudulent, or who, for the purpose of obtaining or aiding to obtain the payment or approval of such claim, makes, uses, or causes to be made or used, any false bill, receipt, voucher, roll, account, claim, certificate, affidavit, or deposition, knowing the same to contain any fraudulent or fictitious statement or entry, * * * shall be imprisoned at hard labor for not less than one nor more than five years, or fined not less than one thousand nor more than five thousand dollars."

Section 3490 provides that:

"Sec. 3490. Any person not in the military or naval forces of the United States, or in the militia called into or actually employed in the service of the United States, who shall do or commit any of the acts prohibited by any of the

provisions of section fifty-four hundred and thirty-eight, title 'Crimes,' shall forfeit and pay to the United States the sum of two thousand dollars, and, in addition, double the amount of damages which the United States may have sustained by reason of the doing or committing of such act, together with the costs of suit; and such forfeiture and damages shall be sued for in the same suit."

On the 4th day of February, 1891, the plaintiff in error filed a petition in the district court of the United States for the eastern district of Missouri, in which it alleged that the defendant in error, who was not a person in the military or naval forces of the United States, or in the militia, had committed 156 violations of the provisions of section 5438, whereby the plaintiff had sustained damage in the sum of $56,885.67, and demanded judgment against him for double this amount of damages and $312,000 in penalties, amounting to in the aggregate to $425.771.34. An amended petition was subsequently filed, which contained 146 counts, each of which set forth a violation by the defendant of the provisions of section 5438. This petition set forth the amount of damages sustained by the plaintiff from each violation, and demanded a recovery of double damages and $2,000 for each of the 146 violations charged. A demurrer to counts numbered 1 to 45, inclusive, and 86 to 122, inclusive, was sustained on the ground that the causes of action stated in these counts were barred by the statute of limitations. At the close of the plaintiff's case upon the trial the court sustained a demurrer to the evidence in support of, and withdrew from the consideration of the jury, the causes of action set forth in all the remaining counts except those numbered 129, 132, 133, 137, 138, 141, and 142.

Counts numbered 1 to 85, inclusive, were founded on vouchers for merchandise, which the defendant presented for payment to Capt. A. E. Miltimore, assistant quartermaster of the United States army at Jefferson barracks, near St. Louis, Mo. during the years 1883, 1884, 1885, and 1886. These vouchers were receipted by the defendant, and the amounts named in them were paid to him. He was a prominent merchant in St. Louis, and a stockholder in the A. F. Shapleigh Hardware Company, a corporation engaged in mercantile business in that city during these years, and that corporation furnished large quantities of merchandise to the United States, which was paid for upon these vouchers, made in the name of, and receipted by, the defendant. During these years extensive repairs and improvements were made by the United States at the Jefferson barracks, under the direction of Capt. Miltimore. The evidence tended to show that the defendant had great confidence in this captain; that he furnished the United States large quantities of supplies through him, and had been acquainted with him for many years; that at the captain's suggestion he made proposals and signed contracts for performing work and furnishing materials at the barracks, and received payments and receipted vouchers therefor whenever they were presented to him by the captain; that upon his orders he paid over to the captain's clerk the moneys he so received, and left the hiring and discharging of the men, their payment, and the accounts between himself and the government and between himself and the workmen employed, entirely to the captain. He testified that he derived no profit from the contracts for work, or from the work done in his name, but that he signed these contracts and vouchers simply as an accommodation to Capt. Miltimore, and relied upon him to make the proper vouchers, and keep the accounts for this work and material used in the repairs and improvements, and that he did not know that any of the vouchers were not correct. The evidence tended to prove that an account was kept upon the books of the A. F. Shapleigh Hardware Company during these years, in which all the merchandise furnished to the government by that corporation or the defendant, through Capt. Miltimore, and all the cash paid to him or his clerk by either of them was charged to him, and all the moneys received by the defendant on the vouchers was credited to him. The causes of action numbered 86 to 146, inclusive, were founded upon vouchers for this work and these materials there stated to have been done and furnished in making the improvements and repairs at the barracks, and there was evidence tending to show that some of the services specified in the seven vouchers named in the causes of action submitted to the jury were never, in fact, per-

formed. To rebut this evidence the defendant introduced in evidence, over the plaintiff's objection, certified copies of the reports of the assistant quartermaster at Jefferson barracks to the United States for the time covered by the seven vouchers, which contained statements of the services performed that exactly corresponded with those contained in the vouchers.

The defendant introduced evidence of his character for integrity and honesty over the plaintiff's objection. The court charged the jury that "a fictitious claim against the government (for the purposes of this suit) may be defined to be a claim preferred against it for services said to have been rendered to it, or for supplies said to have been furnished to the government, no part of which services or supplies were, in fact, rendered or supplied." That "a claim against the government is a 'false' one, within the meaning of the statute, if it is an untrue claim; for example, if a claim is made for labor or supplies said to have been furnished to the government, and the claim is made for more services than have been actually rendered, or for more supplies than have been furnished, such a claim is a false one within the meaning of the statute." That "a fraudulent claim against the government is a false or fictitious claim, gotten up or contrived by some person or persons with the intent to present it for approval and payment, and thus to defraud the government." That to entitle the plaintiff to recover the jury must find that some of the seven claims referred to in the seven counts were either false, fictitious, or fraudulent, and that the defendant knew it when he presented them. That "whether he had such knowledge or not is a question for you to determine, and you may determine it from all the facts and circumstances in evidence before you. I will say this much: You ought not to infer that he had such knowledge merely from the fact (if it is a fact) that he acted negligently, or without ordinary business prudence, in his dealings with Capt. Miltimore. To warrant you in finding that he knew such claims were either false, fictitious, or fraudulent, you must be satisfied that he was aware of such facts or circumstances as would have created the belief in the mind of an ordinarily intelligent and prudent person that the claims were in some respects false, fictitious, or fraudulent." That "the law presumes the defendant to be innocent of the charge made against him. It is also true, as has been stated, that to entitle the government to a verdict in a case of this sort every fact necessary to a conviction, as heretofore explained, must be proved beyond a reasonable doubt. The doubt here referred to is a doubt arising in your minds from the testimony in the case; and it is such a doubt, also, as reasonable men, having heard all the testimony, may fairly entertain in view of all the testimony." The plaintiff excepted to these portions of the charge inclosed in quotation marks, and assigned these and other less important rulings as error. The jury found that the seven vouchers were false, but that the defendant had no knowledge of it, and returned a verdict in his favor, upon which the judgment was rendered to reverse which this writ of error was sued out.

George D. Reynolds, (E. H. Crowder, on the brief,) for the United States.

Given Campbell and Chester H. Krum, for defendant in error.

Before CALDWELL and SANBORN, Circuit Judges, and SHIRAS, District Judge.

SANBORN, Circuit Judge, (after stating the facts.) Where a statute authorizes the state to recover, in a civil suit, penalties prescribed for the commission of a felony, must the government prove its case beyond a reasonable doubt, in order to recover the penalties in such a suit? This is the most important question presented by this record. The burden of proof in judicial proceedings is on him who alleges the existence of a fact denied. Where the fact denied is the commission of a crime, the additional burden of overcoming

the presumption of innocence, which the law always interposes as a shield between accuser and accused, is necessarily imposed upon him who alleges it. In controversies of a civil nature the purpose is generally to obtain the determination of some right of person or property, or to recover compensation for some injury. The parties are ordinarily private citizens or corporations, and the character, life, or liberty of neither party is in jeopardy. In controversies of a criminal nature the purpose is to punish the accused for some violation of his duty to the public. The prosecutor is generally the government, and the defendant is a private citizen, whose character, and either his life, liberty, or property, and sometimes all of them, are placed in jeopardy. To this wide difference in the purpose, the character, and situation of the parties, and in the natural effects of findings and judgments against the defendants in controversies, civil and criminal, is it due that the rule became established that, to warrant a verdict or finding against the defendant in the latter, evidence sufficient to satisfy the jury or court beyond a reasonable doubt is required; while in the former, evidence preponderating in his favor, but less convincing, is sufficient to warrant a recovery by the plaintiff. The presumption that every man is innocent until the contrary appears, and a consideration of the irreparable injury to the defendant that must result from an unjust conviction, tended to the establishment of this rule; but doubtless the controlling consideration was the inequality of the parties in power, situation, and advantage in criminal cases where the government, with its unlimited resources, trained detectives, willing officers, and counsel learned in the law stood arrayed against a single defendant, unfamiliar with the practice of the courts, unacquainted with their officers or attorneys, often without means, and frequently too terrified to make a defense if he had one, while his character and his life, liberty, or property rested upon the result of the trial. Proof sufficient to satisfy beyond a reasonable doubt, then, is required in a criminal case, because its purpose is punishment, not compensation for injury; its prosecutor is the state; the result to the defendant of its successful prosecution is irreparable loss of character, and the loss of either life, liberty, or property; and because the presumption is that every man is innocent until the contrary appears; while less convincing evidence will authorize a recovery in a civil suit, because its purpose is generally compensation for injury or the determination of rights, not the punishment of the offender; the litigants are generally private parties, more nearly equal in resources, advantages, and situation, and neither the character, life, nor liberty of either is ordinarily at stake.

Now, if the government enacts a statute which provides that a case in its nature criminal, whose purpose is punishment, whose prosecutor is the state, and whose successful prosecution disgraces the defendant, and forfeits his property to the state as a punishment for crime, may be brought in the form of a civil suit, does that change the rule of evidence that ought to be applied to it? If a state provides that all proceedings for the punishment of crime shall be conducted in the form of civil suits, does that change their

nature, or the amount of evidence that ought to be required to convict the defendants of the crimes? Is a wolf in sheep's clothing a wolf or a sheep? Take the case at bar. The crimes with which the defendant was charged were felonies. The government might have proceeded by indictment to punish him for them under section 5438. If it had done so, its case must have been proved beyond a reasonable doubt. It elected to proceed under section 3490, by a civil suit, to recover over $300,000 in penalties, to punish the defendant for the same crime. The penalties sought to be inflicted by the latter proceeding are far heavier than any that the court would probably have inflicted under the former. In each proceeding the same government, with its unlimited resources, proceeds against the same citizen to punish him for the same crimes, and in each the single question for the jury to determine is, was this defendant guilty of these felonies? Every consideration which induced the courts to establish the rule that the prosecutor must prove the crime charged beyond a reasonable doubt—the inequality of the parties in power, situation, and advantage; the purpose of the proceeding, which is the punishment of the defendant, not compensation for injury; the irreparable disgrace and injury that must result to the defendant from an unjust recovery, and the presumption of his innocence—demands that this rule be applied to the latter to the same extent as it would be to the former proceeding. It is not the form, but the nature, of this proceeding that must determine the rule to be applied to it. To protect the substantial rights of parties, to wisely administer the law, courts must frequently look beyond the outward form to the real substance and nature of things. Thus in Wisconsin v. Pelican Ins. Co., 127 U. S. 265, 8 Sup. Ct. Rep. 1370, the state of Wisconsin brought in the supreme court a civil suit to collect a judgment rendered in one of its own courts against the Pelican Insurance Company, a corporation of Louisiana, for penalties imposed by a statute of Wisconsin for doing an insurance business therein without having deposited with the proper officer of the state a full statement of its property and business during the previous years. This was a suit to recover a debt. It was founded on a judgment rendered in a proceeding in the form of a civil suit. The judiciary act provided that "the supreme court shall have exclusive jurisdiction of controversies of a civil nature where a state is a party, except between a state and its citizens, and except, also, between a state and citizens of other states, or aliens, in which latter case it shall have original, and not exclusive, jurisdiction." Section 687. But that court looked through the form of the civil suit before it, and through the form of the suit in which the judgment was rendered, to the real nature of the original controversy, and refused to take jurisdiction, because that was a suit to recover a penalty, and was not of a civil nature. Mr. Justice Gray, in delivering the opinion of the court, said:

"The cause of action was not any private injury, but solely the offense committed against the state by violating her law. The prosecution was in the name of the state, and the whole penalty, when recovered, would accrue

to the state, and be paid, one half into her treasury and the other half to her insurance commissioner, who pays all expenses of prosecuting for and collecting such forfeitures. Laws Wis. 1885, c. 395. The real nature of the case is not affected by the forms provided by the law of the state for the punishment of the offense. It is immaterial whether, by the law of Wisconsin, the prosecution must be by indictment or by action, or whether, under that law, a judgment there obtained for the penalty might be enforced by execution, by scire facias, or by a new suit. In whatever form the state pursues her right to punish the offense against her sovereignty, every step of the proceeding tends to one end,—the compelling the offender to pay a pecuniary fine by way of punishment for the offense."

In U. S. v. The Burdett, 9 Pet. 682, 690, 691, a proceeding in rem was instituted against the brig Burdett to enforce a forfeiture of the vessel, and all that pertained to it, for the violation of a revenue law. Neither the life nor liberty of the citizen was in jeopardy; nothing but his property; yet the supreme court held that the prosecution was a highly penal one, and the penalty should not be inflicted unless the infractions of the law were established beyond a reasonable doubt. Mr. Justice McLean, in delivering the opinion of the court, said:

"No individual should be punished for a violation of a law which inflicts a forfeiture of property, unless the offense shall be established beyond reasonable doubt."

In Lilienthal's Tobacco v. U. S., 97 U. S. 238, 271, which was a proceeding in rem to enforce the forfeiture of certain tobacco for the violation of a revenue law, this question did not arise, but there is a dictum of Mr. Justice Clifford's to the effect that the rule that should apply to a proceeding in rem for the forfeiture of property is widely different from that applicable to an action against the person to recover a penalty imposed to punish an offender, and upon that ground he suggests a distinction between that case and Chaffee v. U. S., 18 Wall. 516, and says that in a proceeding in rem "it is correct to say that, if the scale of evidence hangs in doubt, the verdict should be in favor of the claimant," and that "jurors in such a case ought to be clearly satisfied that the allegations of the information are true; and when they are so satisfied of the truth of the charge they may render a verdict for the government, even though the proof falls short of what is required in a criminal case prosecuted by indictment." This statement does not commend itself to our judgment, and it is clearly disapproved, and the distinction between such a proceeding in rem for a forfeiture and an action for a penalty there suggested is expressly repudiated, in the latter well-considered and decisive case of Boyd v. U. S., 116 U. S. 616, 637, 638, 6 Sup. Ct. Rep. 524. That was also a proceeding in rem to enforce a forfeiture for the violation of a revenue law. The fifth section of the act of June 22, 1874, (18 St. p. 187,) in terms empowered the courts in all suits and proceedings other than criminal arising under any of the revenue laws of the United States to require the defendant or claimant on motion to produce any of his books or invoices for the purposes of examination and proof under the penalty of having the allegations made in the motion deemed as confessed. The claimant had been required by an order of the

court under this act to produce an invoice tending to show the quantity and value of the goods seized, and had done so, and the invoice had been introduced in evidence over his objections that the law was unconstitutional and the order unauthorized.   One question presented to the supreme court was whether the proceeding in rem, which was civil in form, was a "criminal case" within the meaning of the clause of the fifth amendment to the constitution of the United States, which declares that no person "shall be compelled in any criminal case to be a witness against himself."   A number of decisions had been rendered in the district and circuit courts to the effect that under such a statute the defendant or claimant could be compelled to produce evidence to support the claim of the government, and thus convict himself.   U. S. v. Mason, 6 Biss. 350, 355;  U. S. v. Three Tons of Coal, Id. 379;  U. S. v. Distillery No. 28, Id. 483;  Stockwell v. U. S., 3 Cliff. 284;  U. S. v. Hughes, 12 Blatchf. 553.   But the supreme court unanimously held otherwise, and Mr. Justice Bradley delivered an exhaustive and convincing opinion, in which he said:

"We are also clearly of opinion that proceedings instituted for the purpose of declaring the forfeiture of a man's property by reason of offenses committed by him, though they may be civil in form, are in their nature criminal.   In this very case the ground of forfeiture as declared in the twelfth section of the act of 1874, on which the information is based, consists of certain acts of fraud committed against the public revenue in relation to imported merchandise, which are made criminal by the statute; and it is declared that the offender shall be fined not exceeding $5,000 nor less than $50, or be imprisoned not exceeding two years, or both; and, in addition to such fine, such merchandise shall be forfeited.   These are the penalties affixed to the criminal acts; the forfeiture sought by the suit being one of them.   If an indictment had been presented against the claimants, upon conviction the forfeiture of the goods could have been included in the judgment.   If the government prosecutor elects to waive an indictment, and to file a civil information against the claimants,—that is, civil in form,—can he by this device take from the proceeding its criminal aspect, and deprive the claimants of their immunities as citizens, and extort from them a production of their private papers, or, as an alternative, a confession of guilt?   This cannot be.   The information, though technically a civil proceeding, is, in substance and effect, a criminal one.   As showing the close relation between the civil and criminal proceedings on the same statute in such cases, we may refer to the recent case of Coffey v. U. S., 116 U. S. 436, 6 Sup. Ct. Rep. 437, in which we decided that an acquittal on a criminal information was a good plea in bar to a civil information for the forfeiture of goods, arising upon the same acts. As, therefore, suits for penalties and forfeitures incurred by the commission of offenses against the law are of this quasi criminal nature, we think that they were within the reason of criminal proceedings for all the purposes of the fourth amendment of the constitution, and of that portion of the fifth amendment which declares that no person shall be compelled in any criminal case to be a witness against himself."

In Chaffee v. U. S., 18 Wall. 516, 522, 544, 545, the government brought a civil action of debt to recover a penalty of double damages imposed for the violation of a revenue law; and the court instructed the jury that, if the government had in its opening case made a prima facie case against the defendants, requiring explanation from them, but not sufficient to satisfy the minds of the jury beyond all reasonable doubt that the plaintiff was entitled to recover, and they believed that the defendants could by their books or

testimony have made certain material facts left uncertain by the proof on the part of the plaintiff certain, and the defendants had knowingly withheld this proof, the jury was authorized to resolve all doubts against them. The supreme court reversed the judgment, and declared this charge erroneous. Mr. Justice Field, in delivering the opinion of the court, said:

"The purport of all this was to tell the jury that, although the defendants must be proved guilty beyond a reasonable doubt, yet, if the government had made out a prima facie case against them,—not one free from all doubt, but one which disclosed circumstances requiring explanation,—and the defendants did not explain, the perplexing question of their guilt need not disturb the minds of the jurors; their silence supplied in the presumptions of the law that full proof which should dispel all reasonable doubt. In other words, the court instructed the jury, in substance, that the government need only prove that the defendants were presumptively guilty, and the duty thereupon devolved upon them to establish their innocence, and, if they did not, they were guilty beyond a reasonable doubt. We do not think it at all necessary to go into any argument to show the error of this instruction. The error is palpable on its statement. All the authorities condemn it."

In U. S. v. McKee, 4 Dill. 128, Mr. Justice Miller and Judge Dillon held that the indictment, conviction, and punishment of a defendant under section 5440 of the Revised Statutes for conspiracy with certain distillers to defraud the United States by the unlawful removal of distilled spirits from their distilleries without the payment of the taxes was a bar to a civil suit by the government to recover the penalty of double the amount of the taxes for the same offense under section 3296 of the Revised Statutes, on the ground that the defendant could not be twice punished for the same offense. In Coffey v. U. S., 116 U. S. 436, 6 Sup. Ct. Rep. 437, the supreme court held that an acquittal on a criminal information was a bar to a proceeding to enforce a forfeiture of property for the same offense.

There is a decided conflict in the decisions of the other courts of this country upon the question whether or not the government should be required to establish its case to a moral certainty when it brings a civil suit to recover a penalty imposed for the violation of some statute. The decisions in the federal courts were generally rendered before the supreme court decided in Boyd v. U. S., supra, that a proceeding in rem to enforce a forfeiture of property and a suit to recover a penalty for a violation of law were criminal cases within the meaning of the constitution. Many of the cases in the state courts were brought to recover penalties for acts or omissions which were not felonies, and some of them were not even misdemeanors. To such cases the reason of the rule obviously applies with less force than to the case at bar. Some of these decisions are Nichols v. Newell, 1 Fish. Pat. Cas. 647; White v. Comstock, 6 Vt. 405; Riker v. Hooper, 35 Vt. 457; Barton v. Thompson, 46 Iowa, 30; Welch v. Jugenheimer, 56 Iowa, 11, 8 N. W. Rep. 673; Hawloetz v. Kass, 25 Fed. Rep. 765; U. S. v. Brown, Deady, 566; Webster v. People, 14 Ill. 365; Hitchcock v. Munger, 15 N. H. 97; People v. Hoffman, 3 Mich. 248; Woodward v. Squires, 39 Iowa, 435, 437. To review these and other authorities here would serve no good purpose, since the decisions of the supreme court to which we have referred are binding upon us, commend themselves to our judgment, and in our opin-

ion are decisive of this case. They maintain the following propositions: In applying the statutes, constitution, and rules of law to the various suits and proceedings as they arise, courts should look beyond their form, and be governed by their character. A proceeding in rem to enforce a forfeiture for the violation of a law, and an action to recover a penalty imposed for such a violation, while civil in form, are in their nature and character criminal proceedings; they are criminal cases within the meaning of the constitution. Boyd v. U. S., supra. Where provision is made by statute for the punishment of an offense by fine or imprisonment, and also for the recovery of a penalty for the same offense by a civil suit, a trial and judgment of conviction or acquittal in the criminal proceeding is a bar to the civil suit, and a trial and judgment for the plaintiff or defendant in the civil suit is a bar to the criminal proceeding. Coffey v. U. S., supra; U. S. v. McKee, supra. It is now settled by the great current of the authorities in this country that where a criminal act is alleged in a civil suit—in a suit that is civil not in form merely, but in its nature and purpose—proof of the criminal act beyond a reasonable doubt is not required to warrant a verdict or decision in favor of the party who makes the allegation. 1 Greenl. Ev. § 13a, note; Kane v. Insurance Co., 17 Amer. Law Reg. (N. S.) 293, 297; Insurance Co. v. Wilson, 7 Wis. 169; Blaeser v. Insurance Co., 37 Wis. 31; Knowles v. Scribner, 57 Me. 495; Hoffman v. Insurance Co., 1 La. Ann. 216; Schmidt v. Insurance Co., 1 Gray, 529; Young v. Edwards, 72 Pa. St. 257, 267; Insurance Co. v. Johnson, 11 Bush, 587; Rothschild v. Insurance Co., 62 Mo. 356; Bradish v. Bliss, 35 Vt. 326; Ellis v. Buzzell, 60 Me. 209; Folsom v. Brawn, 5 Fost. (N. H.) 114; Matthews v. Huntley, 9 N. H. 146; Welch v. Jugenheimer, 56 Iowa, 11, 8 N. W. Rep. 673.

The United States might have maintained a civil suit for the single damages it sustained, if any, from the wrongful acts of the defendant charged in this complaint without establishing its case beyond a reasonable doubt. Such a suit would have been a civil suit in its nature and purpose as well as in its form. The action at bar is a civil suit in form; but when, under the form of this civil suit, the government sought to punish this defendant for felonies by recovering the penalty of double damages and $2,000 for each offense, it made this proceeding criminal in its nature and purpose, and invoked the application to it of the rules of evidence applicable to criminal trials. While civil in form, all its other characteristics were those of a criminal case; its prosecutor was the government; its purpose was punishment; the defendant's conviction of a felony was essential to the plaintiff's recovery; the defendant's character and property were in jeopardy, because the government sought to punish him in this suit; and the verdict and judgment here would be a bar to any criminal prosecution for the same offense. The case became a criminal case under the cloak of a civil suit, and the reason of the rule required, and the decisions of the supreme court warranted, the application to it of the rule that the plaintiff must establish its case by proof beyond a reasonable doubt.

For the same reason the evidence of the defendant's character was

properly received. When a man whose character for honesty and integrity has been unquestioned for 40 years in the community in which he lives is charged by his government on circumstantial evidence with knowingly defrauding it, in a direct proceeding to punish him for the crime that character ought to serve him as a shield against unfounded accusations, and the evidence of it ought to be received and to have no light weight in determining the issue. The presumption is strong that a man of such character would not be guilty of such a crime. That presumption accompanies him in every other situation in life, and he is entitled to the benefit of it in the jury room. 1 Whart. Crim. Law, § 636.

The defendant's testimony was that he presented these vouchers for services and received payment of them without examining them, and without any knowledge whether they were correct or incorrect, in reliance upon the assistant quartermaster, who prepared them for him. The counsel for the government requested the court to charge "that it was the duty of the defendant, before presenting the vouchers for payment and allowance and receiving the money thereon, to have exercised such care and prudence as a man of ordinary business capacity and prudence would exercise to determine whether or not the accounts were in fact true; and that if, without such inquiry as an intelligent man would make under similar circumstances to ascertain that the facts presented were in fact true, it should turn out that they were false, then the defendant was responsible in this action for the consequences of presenting false vouchers." The court refused to give this request, and charged that to enable the plaintiff to recover the jury must be satisfied that the defendant knew some of the claims he presented were false, fictitious, or fraudulent; that they might determine whether or not he had such knowledge from all the facts and circumstances in evidence; that they ought not to infer that he had such knowledge merely from the fact that he acted negligently, or without ordinary business prudence, in his dealings with Capt. Miltimore; but that to warrant a finding that he knew such claims were either false, fictitious, or fraudulent they must be satisfied that he was aware of such facts or circumstances as would have created the belief in the mind of an ordinarily intelligent and prudent person that the claims were in some respects false, fictitious, or fraudulent. In other words, the counsel for the government insisted that the defendant was liable to pay the prescribed penalties if he was negligent in examining or presenting the false vouchers, and the court charged that he was not liable in this action for mere negligence, but was liable only in case he was aware, when he presented the vouchers, of such facts and circumstances as would induce an ordinarily intelligent and prudent man to believe them to be false. The statute prescribes these penalties not for negligently presenting false vouchers, but for presenting them "knowing the same to contain any fraudulent or fictitious statement or untruth." It is not negligence, but guilty knowledge, for which punishment is here prescribed, and nothing can make it more evident that the request was wrong and the charge right than this statement.

The court charged that "a fictitious claim against the government (for the purposes of this suit) may be defined to be a claim preferred against it for services said to have been rendered to it, or for supplies said to have been furnished to the government, no part of which services or supplies were in fact rendered or supplied," (by the person making the claim, or by the person in whose favor the account or claim purports to have been made out;) and it is urged that this charge was erroneous, because the court did not add to it the words contained in the parenthesis at the close of the quotation above; that under the charge as given one might present a fictitious claim in his own name for services rendered or supplies furnished by another, and for which the government had once paid the rightful claimant, and this second claim would not, under the court's definition, be fictitious.   The vice of this argument is that such was not the case presented to the court below, and its charge was given "for the purposes of this suit," and not for the imaginary case supposed in the brief presented to this court.   The evidence was that the defendant signed some of these contracts and vouchers for the accommodation of Capt. Miltimore; that he had no pecuniary interest and derived no pecuniary benefit from them, but that he had paid over to the captain's clerk all the money he collected on the vouchers, as he supposed, to pay the men whom the captain hired to perform these services; that the captain did hire and pay some men, and that a part of the services charged for in the vouchers were actually rendered to the government.   For these services that were performed no one but the defendant presented any vouchers or claims, and the question was not whether the defendant had presented claims for services for which the government had paid or become indebted to another, but simply whether he had presented and received payment of claims for any services that had never in fact been rendered by any one.   The definitions of fictitious, false, and fraudulent claims given by the court fairly submitted this question to the jury, and there was no error in this portion of the charge.   After testimony had been introduced that the defendant admitted that all the transactions between him and Capt. Miltimore were entered in the account with the captain on the books of the A. F. Shapleigh Hardware Company, that account, which opened November 25, 1882, and closed May 8, 1886, was introduced in evidence.   With the exception of one item of $15.50, it consisted of merchandise items and cash items.   The government proved by Mr. Kent that the cash credits to Miltimore on this account were $78,-531.38, and that the cash debits were $55,623.53, and the entire account exactly balanced.   The government also proved by Mr. Kent that the net amount of merchandise charged to Miltimore in this account subsequent to February 4, 1885, (prior to which date the claims of the government against the defendant were barred by the statute of limitations,) was only $6,566.88, while he had presented vouchers for merchandise therein said to have been furnished to the government subsequent to that date to the amount of $9,761, besides vouchers for services in which some other merchandise was charged. The government then offered to prove the amount and items of the

merchandise charged to Miltimore in this account prior to February 4, 1885, and the court excluded the evidence. It is clear that this ruling could not and did not prejudice the government, because it had already proved that the defendant had presented vouchers, subsequent to February 4, 1885, for merchandise, amounting to $3,194.12 more than was charged to Miltimore on this account, and proof that merchandise was charged to him prior to that date could not have increased, but might have diminished, this discrepancy, because it might appear from this evidence that some of this earlier merchandise was included in the later vouchers. It is not necessary to determine whether there was technical error in this ruling, for it is well settled that "no judgment should be reversed in a court of error when it is clear that the error could not have prejudiced, and did not prejudice, the rights of the party against whom the ruling was made." Lancaster v. Collins, 115 U. S. 222, 227, 6 Sup. Ct. Rep. 33; Deery v. Cray, 5 Wall. 795, 803; Gregg v. Moss, 14 Wall. 564, 569; Lucas v. Brooks, 18 Wall. 436, 454; Allis v. Insurance Co., 97 U. S. 144, 145: Cannon v. Pratt, 99 U. S. 619, 623; Mining Co. v. Taylor, 100 U. S. 37, 42; Hornbuckle v. Stafford, 111 U. S. 389, 394, 4 Sup. Ct. Rep. 515.

For the same reason it is unnecessary to determine whether or not there was technical error in the receipt in evidence of the official reports and certificates of the assistant quartermaster, Miltimore, and the major commanding at Jefferson barracks, made in 1885 and 1886, to the effect that the services charged for in the seven vouchers submitted to the jury had actually been rendered to the government by the defendant. The only purpose and effect these reports could have had was to rebut the evidence that had been introduced by the government to the effect that the claims made in these seven vouchers were false. They did not tend to show whether or not the defendant had knowledge of their falsity, for it did not appear that he had any knowledge of the reports. The jury found specifically that those seven vouchers were false, so that it conclusively appears that the introduction of the reports and certificates of the officers in no way prejudiced the rights of the government.

It is assigned as error that a quartermaster of the army was permitted to testify what sort of an examination is usually made by the commanding officer of a post for the purpose of making reports of this description, but at the trial no ground of objection to this testimony was stated. The only objection consists of the two words, "Objected to." A mere objection, where no grounds for it are assigned at the trial, cannot be considered in an appellate court. Burton v. Driggs, 20 Wall. 125, 133; Camden v. Doremus, 3 How. 515, 530; Baldwin v. Blanchard, 15 Minn. 489, 496, (Gil. 403.)

It was the duty of the court below to withdraw the case from the jury, and to direct them to return a verdict for the defendant on every cause of action in this complaint upon which the evidence was of such a character that the court, in the exercise of a sound judicial discretion, would have been compelled to set aside a verdict returned in favor of the plaintiff. Railroad Co. v. Davis, 53

Fed. Rep. 61; Railroad Co. v. Converse, 139 U. S. 469, 472, 477, 11 Sup. Ct. Rep. 569; North Pennsylvania R. Co. v. Commercial Bank, 123 U. S. 727, 733, 8 Sup. Ct. Rep. 266; Monroe v. Insurance Co., 52 Fed. Rep. 777, 778. Tested by this rule, a careful examination of this record has satisfied us that there was no error in the ruling of the court withdrawing from the jury and instructing them to return a verdict for the defendant upon all the causes of action upon which the government went to trial except the seven submitted to the jury.

There are other errors assigned, but they were not discussed in the briefs or arguments, and are deserving of no separate consideration. There was no sufficient ground for their assignment, and no error prejudicial to the government in the trial of this case.

The judgment is affirmed.