REGAN v. UNITED STATES.

(Circuit Court of Appeals, Second Circuit. November 14, 1910.)

No. 14.

1. ALIENS (§ 58*)—ACTION FOR IMPORTING CONTRACT LABORER—EVIDENCE.

On the trial of an action against a defendant charged with having prepaid the transportation of a contract laborer into the United States in violation of Act Feb. 20, 1907, c. 1134, §§ 4, 5, 34 Stat. 900 (U. S. Comp. St. Supp. 1909, pp. 450, 451), a proposed manifest for the immigrant on the form prescribed under section 12 of the act filled out by a third person before sailing of the vessel, and which was not used, but which contained the statement that the immigrant's passage was paid by defendant,

was incompetent as evidence against him, as the declaration of a third person not made in his presence.

[Ed. Note.—For other cases, see Aliens, Dec. Dig. § 58.*

Importation of contract labor, see note to United States v. Parsons, 66 C. C. A. 133.]

2. ALIENS (§ 58*)—ASSISTING IN IMPORTATION OF CONTRACT LABORER—ACTION FOR PENALTY—MEASURE OF PROOF REQUIRED.

In an action brought under Act Feb. 20, 1907, c. 1134, §§ 4, 5, 34 Stat. 900 (U. S. Comp. St. Supp. 1909, pp. 450, 451), which provide that it shall be a misdemeanor for any person to assist the importation of a contract laborer, and that for every violation of such provision the person violating it shall forfeit and pay the sum of $1,000, "which may be sued for and recovered by the United States * * * as debts of like amount are now recovered in the courts of the United States," the government has the burden of proving the violation of the act by defendant beyond a reasonable doubt.

[Ed. Note.—For other cases, see Aliens, Dec. Dig. § 58.*]

In Error to the District Court of the United States for the Southern District of New York.

Action by the United States against James B. Regan. Judgment for plaintiff, and defendant brings error. Reversed.

This cause comes here upon a writ of error to review a judgment of the Circuit Court, Southern District of New York, in favor of defendant in error, plaintiff below. The action was to recover the sum of $1,000 by way of penalty for an alleged violation of sections 4, 5, Act Feb. 20, 1907, c. 1134, 34 Stat. 900 (U. S. Comp. St. Supp. 1909, pp. 450, 451), such violation consisting, as it is charged, in soliciting, assisting, and encouraging the importation of a contract laborer into this country. The alien, one Foreau, was a pastry cook who had been employed in the Carleton Hotel, London, and who presented himself with, as he says a letter of introduction from one Neumann, the manager of that hotel to the defendant Regan, proprietor of the Knickerbocker Hotel in New York, who thereupon gave him employment. At the end of 50 days he was discharged. Foreau had never met Regan before the interview at which he presented the letter, and it is the theory of the government that Neumann was the agent of Regan to secure the pastry cook, and that in suggesting his going to the Knickerbocker, in writing the letter of introduction, and in paying his passage—all which Foreau testified that Neumann did—Neumann was acting for Regan or on his procurement.

G. B. Rosenheim and Max D. Steuer, for plaintiff in error.

Henry A. Wise, U. S. Atty. (W. L. Wemple, Asst. U. S. Atty., of counsel), for the United States.

Before LACOMBE, COXE, and WARD, Circuit Judges.

LACOMBE, Circuit Judge (after stating the facts as above). Defendant contends that there was not sufficient evidence to take the case to the jury, and that his motion to dismiss at the close of the testimony should have been granted. Neumann was not examined, and the defendant did not take the stand. The only witnesses were Foreau for the government and Mrs. Regan for the defendant. She had acted as interpreter at the interview, because Foreau did not speak English and Regan did not speak French. The evidence to support the government's contention is meager, but we do not find it necessary to discuss it in detail, since there are exceptions in the case which call

for a reversal, and on a new trial the testimony may be somewhat different.

Section 12 of the act of February 20, 1907, provides that, upon the arrival of any alien by water at any port within the United States, it shall be the duty of the master of the vessel having said alien (i. e., an alien entering the United States) on board to deliver to the immigration officers at the port of arrival lists or manifests made at the time and place of embarkation of such alien on board such vessel, which shall, in answer to questions at the top of said list, state as to each alien the full name, age, and sex and also certain other particulars. Among these particulars required to be set forth in the manifest is the statement whether the alien has paid his own passage, or whether it has been paid by any other person, and, if so, by whom. These lists are to be verified under oath by the master of the vessel.

A manifest was prepared before embarkation, giving particulars as to Foreau. It may fairly be presumed that such manifest was delivered to the immigration officers, but the government did not produce it nor offer it in evidence.

It appears from Foreau's testimony that a blank form of manifest was obtained from the steamship company's agent, and that it was filled up by Neumann in his office at the Carleton Hotel, witness answering several questions which Neumann put to him when filling it up. For some reason proposed manifest was unsatisfactory to the steamship company, so a new one was prepared and signed when Neumann paid the passage money. Foreau kept the old form and produced it at the trial. When it was offered in evidence defendant's counsel objected, as follows:

"I object to it because it clearly contains a deduction here as to an important item in this transaction, the payment of the passage money, on the grounds that it is immaterial, incompetent, and irrelevant."

The objection was overruled, exception reserved, and the paper admitted. The first part of this objection is not altogether clear, but counsel did specifically call attention to the part of the document which referred to payment of passage money, and objected that the evidence offered was incompetent. The eighteenth question called for a statement by whom passage was paid, and Mr. Neumann's written answer thereto was: "Mr. Regan, Hotel Knickerbocker, New York."

To admit this document was substantially to admit evidence that Neumann had made declarations to third parties, not in the presence of defendant, as to what defendant had done, which would clearly be incompetent. We must also conclude that the introduction of this piece of evidence was harmful to defendant. Indeed, since the only witness for the government was Foreau, it is highly probable that the jury found in this apparently corroborative statement by Neumann sufficient to enable them to reach the conclusion that defendant was guilty of the offense charged.

It may be noted that we are not now expressing any opinion as to whether the original manifest, sworn to by the master of the vessel and duly filed with officers of the government, could or could not be admitted in evidence, as a public document or on any other theory;

that question may be decided when it is presented. The admission of the unused filled up blank form was error calling for reversal.

Exception was also reserved to the court's refusal to charge that, in order to warrant a recovery of the penalty, the evidence must satisfy the jury beyond a reasonable doubt that defendant was guilty of the offense charged. Since there is to be a new trial the question raised by that exception should be now decided.

The sections of the act of 1907, on which the action is founded, are as follows:

"Sec. 4. That it shall be a misdemeanor for any person, company, partnership, or corporation, in any manner whatsoever, to prepay the transportation or in any way assist or encourage the importation or migration of any contract laborer or contract laborers into the United States, unless such contract laborer or contract laborers are exempted under the terms of the last two provisos contained in section two of this act.

"Sec. 5. That for every violation of any of the provisions of section 4 of this act the person, partnership, company, or corporation violating the same, by knowingly assisting, encouraging, or soliciting the migration or importation of any contract laborer into the United States shall forfeit and pay for every such offence the sum of $1,000, which may be sued for and recovered by the United States, or by any person who shall first bring his action therefor in his own name and for his own benefit, including any such alien thus promised labor or service of any kind as aforesaid, as debts of like amount are now recovered in the courts of the United States; and separate suits may be brought for each alien thus promised labor or service of any kind as aforesaid."

Section 4 differs from the same section in the earlier statute in providing that the offense of prepaying transportation and encouraging the immigration of a contract laborer "shall be a misdemeanor"; the earlier act provided merely that it "shall be unlawful."

Over 30 years ago the Supreme Court held that, in an action brought by the government to recover penalties for alleged frauds upon the revenue, the burden rests upon the government to make out its case beyond a reasonable doubt. The statute in that case (section 48, c. 173, 13 Stat. 240, Act June 30, 1864) provided that any person who shall have in his custody or possession any distilled spirits subject to duty for the purpose of selling the same with the design of avoiding payment of the duties imposed thereon shall be liable to a penalty of $500 (Chaffee v. U. S., 18 Wall. 518, 21 L. Ed. 908). There seems to us to be no difference in substance between the provision that one "shall forfeit and pay" and the provision that one "shall be liable to a penalty." That the act charged to have been committed by defendant in the case at bar was a crime is indisputable. The statute expressly makes it a misdemeanor.

In Lilienthal's Tobacco v. United States, 97 U. S. 271, 24 L. Ed. 901, it was pointed out that the rule laid down in Chaffee v. United States, supra, did not apply to informations in rem against property which the court says differ widely from "an action against the person to recover a penalty imposed to punish an offender." In no other case which we have been able to find in the Supreme Court reports is the Chaffee Case criticized or distinguished in any way. In the Court of Appeals for the Eighth Circuit there is an elaborate discussion of the question citing many authorities. U. S. v. Shapleigh, 54 Fed. 126,

1 C. C. A. 237. In that case the government brought suit to recover the double damages and penalty of $2,000 prescribed by section 3490, U. S. Rev. St. (page 2328, U. S. Comp. St. 1901), against any person presenting a false or fraudulent claim against the United States. The conclusion reached was that the government "might have maintained a civil suit for the single damages it sustained if any, from the wrongful acts of the defendant without establishing its case beyond a reasonable doubt. But that, when under the form of this civil suit the government sought to punish the defendant for felonies by recovering the penalty of double damages and $2,000, for each offense, it makes this proceeding criminal in its nature and purpose and invoked the application to it of the rules of evidence applicable to criminal trials."

The counsel for the government insists that the question was decided adversely to the contention of defendant in Hepner v. U. S., 213 U. S. 103, 29 Sup. Ct. 474, 53 L. Ed. 720, 27 L. R. A. (N. S.) 739. In that case, upon the trial of a cause of action in all respects like the one at bar, the trial judge directed a verdict for the plaintiff (the United States). Writ of error was sued out to this court which certified to the Supreme Court the question whether in such a suit verdict could be directed for the plaintiff. The certificate stated that it appeared by undisputed testimony that defendant had committed an offense against sections 4 and 5 of the act of 1903 (Act March 3, 1903, c. 1012, 32 Stat. 1214). This was the earlier statute which did not provide expressly that the offense should be a misdemeanor. The Supreme Court discusses the subject at some length, holding as had been held before in numerous cases that the action before it was a civil suit, but not overruling the decisions in Boyd v. U. S., 116 U. S. 616, 6 Sup. Ct. 524, 29 L. Ed. 746, and Lees v. U. S., 150 U. S. 476, 14 Sup. Ct. 163, 37 L. Ed. 1150, which held that in such suits defendants could not be compelled to be witnesses against themselves. "The Lees and Boyd Cases," says the court, "do not modify or disturb, but recognize, the general rule that penalties may be recovered by civil actions, although such actions may be so criminal in their nature that the defendant cannot be compelled to testify against himself in such actions in respect to any matters involving, or that may involve, his being guilty of a criminal offense." The court in the Hepner Case held that the Boyd and Lees Cases did not negative the proposition that the court may direct a verdict for the plaintiff in a civil action to recover statutory penalties or forfeitures, but it does not necessarily result from that decision that recovery, even in a civil action, of an arbitrary penalty prescribed for a misdemeanor may be had when there is a reasonable doubt as to whether the defendant was guilty of the offense.

In the Hepner opinion the court is careful to say, more than once, that the certificate states that the evidence was undisputed, which, "in effect, requires the court to assume as the basis of any answers to the question that, according to the undisputed testimony the Government proved the alleged violation of law. In such a case there are no facts for the jury to consider." It may be added that, if there

are no facts for the jury to consider, no question of reasonable doubt can possibly arise. We conclude, therefore, that Hepner v. U. S. does not warrant the lower federal courts in disregarding the holding in Chaffee v. U. S. and are of the opinion that it was error to refuse the request to charge the jury that the government must prove its case beyond a reasonable doubt.

It will be understood that we now decide only the concrete case before us under this particular statute. What may be the proper rule under some other statute is a question which will be dealt with when it is presented.

Objection was raised to the accepting as interpreter of an employé of the government. We do not find error in this, but are clearly of the opinion that, since the government does not furnish official interpreters for the use of the courts, it would be better practice for the trial court to refuse to accept the services of any one as interpreter who is in the employ of either party, except upon the consent of both sides.

The judgment is reversed.